## 73995. RICHIE v. THE STATE.
(358 SE2d 648)

BEASLEY, Judge.

Appellant appeals on the general grounds from a conviction of rape and aggravated sodomy.

1. In accordance with standard procedure, the victim was conducting job interviews for a national corporation in her motel room in Gainesville, Georgia. Appellant phoned and obtained an interview and arrived a few minutes later. After he completed an application form with the victim's help, appellant asked to use the bathroom. The victim refused but appellant went in anyhow, came out, and closed the room drapes. He appeared to start out the door but stopped and locked it, and then struck the victim, knocking her onto the bed. Appellant attempted to remove the victim's clothing.

Her testimony at that point became crucial to the precise issue before the court: [After recess] "The Court: Proceed, Mr. Darragh. Q. I believe your testimony is that he was doing something with your clothes; what happened? A. He ripped my skirt, and he was holding me down by the back of my head; he had a handfull of my hair. And I turned around to try to get him off of me again and he hit me. He'd hit me so many times in the head that I was bleeding, and this time it knocked me down on the bed, I couldn't — I don't remember anything more until a couple of seconds later I was — my body was pulled halfway off the bed. And my panty hose were down to my ankles, and he had his hand between my legs, and then his body pressed up against mine, and I don't know if he did anything. There was something there — Q. When you say, something there, would you describe

what you're talking about particularly? A. Something — something was between my legs, and something was there but I couldn't see because he was right behind me, and then — Q. Was his body up against yours at that time? A. Yes. Q. The something between your legs, did it have contact with your sexual organs? A. Yes. Q. Did it penetrate your sex organs, even slightly? A. Slightly, maybe, yes. I know something was touching me, and he was trying to put something in. Then he stopped and he sat down on the bed. He pulled my head over — Q. How did he pull your head over? A. With my hair. He jerked my head over to his — please, you know what I'm saying. He made me put it in my mouth. Q. Can you testify as to whether his sexual organs came in contact with your mouth? A. Yes, in my mouth. It was inside my mouth. Q. Now was he grabbing your hair at that time? A. Yes. He was holding my head down; was making me put it there. Q. What happened then? A. Then he jerked my head back, and he got up. He ran out of the room, and then he was gone."

The victim immediately called the desk clerk, who called the police. When they arrived the victim was hysterical, had blood on her face and was wrapped in a towel. The police also observed blood on her clothing, which was torn, and on the door.

A description of appellant was obtained. The following day the victim was called to the police station to look at photographs, including one of appellant. Before the police had an opportunity to explain what they wanted, the victim saw the photographs lying on a table and immediately picked up appellant's picture and told the police it depicted the person who assaulted her. She also identified appellant positively in court.

Appellant testified that he was with his girl friend at the time of the offense which the girl friend corroborated, and had never seen the victim before.

A medical examination of the victim disclosed no evidence of spermatozoa or semen. A handwriting comparison from the job application form and appellant's exemplar was inconclusive. None of appellant's pubic hair or hair from his head was found on the victim's clothing.

A person commits the offense of rape when he has carnal knowledge of a female forcibly and against her will. Carnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ. OCGA § 16-6-1.

"[T]he penetration of the female sexual organ by the sexual organ of the male, which is necessary to constitute rape, need be only slight; it is not necessary that the vagina shall be entered or the hymen ruptured, but an entering of the anterior of the organ, known as the vulva or labia, is sufficient." *Lee v. State*, 197 Ga. 123 (1) (28 SE2d 465) (1943). That was given in charge to the jury, as well as

charges on aggravated assault and attempted rape.

"In a rape case, penetration may be proved by indirect or circumstantial evidence." *Payne v. State*, 231 Ga. 755 (1) (204 SE2d 128) (1974).

The testimony in this case may be compared with that in *Runion v. State*, 180 Ga. App. 440 (1) (349 SE2d 288) (1986) and *Jackson v. State*, 157 Ga. App. 604 (1) (278 SE2d 5) (1981). Measured accordingly, the testimony of the victim here clearly raises reasonable inferences of fact for finding beyond a reasonable doubt that a rape occurred.

The victim's loss of composure during her testimony had prompted the court, observing the sensitivity, to declare a recess. It is plain that she was unable to bring herself to be entirely explicit. Her reluctance to actually name the aggressor's sex organ does not disallow a finding that that is what she meant and that that is what defendant was trying to insert in her. And her hesitation to firmly announce in public that there was penetration does not detract from her admission that there was. The context of her testimony, which is related above, is also relevant.

We hold that the jury could reasonably infer that the "something" defendant assaulted the victim with was his sexual organ and that the evidence was sufficient for a rational factfinder to find the appellant guilty beyond a reasonable doubt of rape. Thus, it met the standard of proof required by *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The evidence of aggravated sodomy related above was also sufficient to meet the standard of proof required by *Jackson v. Virginia*, supra, for conviction. The only issue in regard to that offense was the credibility of witnesses, which was a question for the jury. *Bryant v. State*, 174 Ga. App. 468 (1) (330 SE2d 406) (1985).

*Judgment affirmed. Birdsong, C. J., Deen, P. J., McMurray, P. J., Banke, P. J., Pope and Benham, JJ., concur. Carley and Sognier, JJ., dissent.*

SOGNIER, Judge, dissenting.

I respectfully dissent to the finding by the majority that the evidence is sufficient to show beyond reasonable doubt that appellant is guilty of rape. The only issue as to rape is whether the penetration was by appellant's sex organ, which is an essential element of the offense of rape. OCGA § 16-6-1. I have scrutinized the record and find no evidence of penetration by appellant's sex organ. The State has the burden of proving each essential element of an offense beyond reasonable doubt. OCGA § 16-1-5; *Phillips v. State*, 162 Ga. App. 471 (2) (291 SE2d 776) (1982). An *inference* cannot relieve the State of this burden, especially where, as here, there is no evidence to support

such an inference. To infer that penetration by "something" is proof beyond a reasonable doubt that the penetration was with appellant's sex organ is to approve conviction based on evidence insufficient to meet the standard of proof required by *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

I do not find the victim's failure to be explicit in regard to the rape to be based on the fact that she was upset, because immediately after her testimony that she was penetrated "maybe slightly" by "something," she was very explicit about the offense of aggravated sodomy. Rather, she was not explicit because appellant was behind her, and she could not state what penetrated her. Accordingly, I would reverse appellant's conviction of rape.

I am authorized to state that Judge Carley joins in this dissent.

Decided June 8, 1987.

*George H. Law III*, for appellant.
*C. Andrew Fuller, District Attorney, Daniel A. Summer, Assistant District Attorney*, for appellee.