A98A2293. CHADWICK v. THE STATE.
(511 SE2d 286)

ANDREWS, Judge.
Leon Chadwick, Jr. appeals after conviction and sentencing for driving under the influence of marijuana, improper passing, and possession of marijuana. He alleges denial of his motion for directed verdict on the first charge was error because of a fatal variance in that charge and the evidence introduced. Further, he contends the first and third charges merged. We find no error.

1. Viewed in favor of the verdict, the evidence was that Argo was driving on an unfamiliar two-lane road looking for the Naval Air Station Resort. He was going about 35 mph in a no passing zone. Although he missed the entrance, he saw another driveway a little farther. When he spotted that driveway, he turned on his left turn signal, applied his brakes, and began his turn when he was struck in the driver's side door by a motorcycle driven by Chadwick. The impact flattened the left front tire and jammed his door and fender so that his door would not open. After the wreck, his car was positioned so that the double yellow line was running through the center of his tires.

Argo consoled his pregnant wife and then went to check on Chadwick, who was in the ditch, injured. Although Argo tried to keep Chadwick still, he continued to move around, saying he was looking for his nugget, a piece of jewelry. Argo, who was unfamiliar with the smell of marijuana, smelled some type of odor on Chadwick, which was not aftershave or cologne, but was "just strange."

The wreck occurred around 4:14 p.m., and Chadwick's blood was taken at 5:50 p.m., after implied consent warnings were read by Trooper Lowe. Chadwick told Lowe that he noticed the car slowing but did not notice the turn signal when he went around to pass on the left.

Dr. McCurdy, the forensic toxicologist, tested Chadwick's blood and found it positive for marijuana and opiates.[1] Dr. McCurdy stated that the presence of morphine would not give a false positive for marijuana. Marijuana is measured in nanograms per milliliter, with 25 nanograms being the minimum considered positive. Most readings seen at the crime lab register below 100. Chadwick's blood contained 159 nanograms per milliliter, an unusually high reading, which indicated to Dr. McCurdy either recent use or heavy chronic use.

Chadwick testified that he had not personally smoked marijuana, but had been doing plumbing work for a neighbor and had been in the presence of six to eight persons smoking marijuana while he worked. Dr. McCurdy testified that the highest level ever recorded in blood due to such passive inhalation was two nanograms per milliliter.

The evidence of the first and third counts was legally sufficient. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The first and second enumerations claim error in the court's denial of Chadwick's motion for directed verdict based on fatal vari-

---

[1] Chadwick was administered morphine at the hospital as part of his treatment for a punctured lung, broken ribs, and other injuries.

ance on the first count and the court's charge on that count and are considered together.

The accusation charged Chadwick with having marijuana and its metabolites present in his urine while driving. No urine sample was analyzed, and the direct evidence dealt with metabolites in the blood. At the close of the State's case, Chadwick moved for directed verdict on this ground and contends its denial was error.

" ' "Our courts have departed from an overly technical application of the fatal variance rule, focusing instead on materiality. The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused. . . ." ' *Denson v. State*, 212 Ga. App. 883 (2), 884 (443 SE2d 300). ' "Under *DePalma v. State*, 225 Ga. 465, 469 (169 SE2d 801) (1969), and *Dobbs v. State*, 235 Ga. 800 (3) (221 SE2d 576) (1976), '(n)ot every variance in proof from that alleged in the indictment is fatal.' *Givens v. State*, 149 Ga. App. 83, 86 (253 SE2d 447) (1979). The crucial requirements are (1) that the accused be definitely informed as to the charges against him, so that he is able to present his defense, and (2) that he may be protected against another prosecution for the same offense. *DePalma*, supra. Unless the variance subjects defendant to one of these dangers it is not fatal. (*Glass v. State*, 199 Ga. App. 530, 531 (1) (405 SE2d 522) (1991).)" ' *Battles v. State*, 262 Ga. 415, 417 (5) (420 SE2d 303)." *Cole v. State*, 216 Ga. App. 68, 70 (2), 71 (453 SE2d 495) (1995).

When asked how the variance had affected the defense, counsel stated that "[w]e knew that was going to be a problem for the District Attorney and we prepared in this manner. Had he been charged by blood, we would have approached it a little bit differently, but we were prepared to fight it regarding to urine and there's no urine test whatsoever." Asked for specifics as to how it affected his defense, counsel stated "[t]hat's confidential."

We find no fatal variance. As noted by the court, the presence of marijuana metabolites in the blood is circumstantial evidence from which a jury could conclude they were also present in the urine, as specifically charged. Chadwick testified that he had, in fact, been exposed to marijuana smoke, although only passively, making it difficult for any such variance to have adversely affected him. Also, Chadwick acknowledged that he was aware he was being charged with a violation of OCGA § 40-6-391 (a) (6), and he is clearly protected from a second prosecution.

Chadwick also moved for a mistrial based on the court's intention to charge the entire Code section, OCGA § 40-6-391 (a) (6), using both blood and urine, and contends its denial was error.

" 'It is generally not error to charge an entire Code section even though part of that section may be inapplicable to the allegations and

the evidence.' *Perguson v. State*, 221 Ga. App. 212, 213 (1) (470 SE2d 909) (1996). 'However, error arises if the indictment specifies the commission of a crime by only one of several methods possible under the statute and a reasonable probability exists that the jury convicted the defendant of committing the offense in a manner not charged in the indictment.' *Levin v. State*, 222 Ga. App. 123, 126-127 (6) (473 SE2d 582) (1996)." *Hunley v. State*, 227 Ga. App. 234-235 (1) (488 SE2d 716) (1997).

Here, the court read the indictment to the jury as well as the entire Code section, and as noted above, there was circumstantial evidence of marijuana metabolites in the blood. Under these circumstances, " 'we will neither impute an adverse construction to the charge nor give so little credence to the ability of the jury to select that portion of the statute obviously applicable to the facts and issues presented for their determination.' (Citations and punctuation omitted.) *Kennedy v. State*, 205 Ga. App. 152, 156 (5a) (421 SE2d 560) (1992)." *Hogan v. State*, 210 Ga. App. 122, 124 (3) (435 SE2d 494) (1993).

3. Finally, Chadwick contends that the offenses of possession of marijuana by ingestion (Count 3) and driving while having marijuana or its metabolites present in his urine (Count 1) merged.

Although Count 3 of the accusation filed by the district attorney recites that it was charged under OCGA § 16-13-30, that section is a felony which may not be brought by accusation pursuant to OCGA § 17-7-70 without the assent of the accused, which does not appear in the record here. Nor is it one of those felonies listed in OCGA § 17-7-70.1, which, under certain circumstances not present here, may be pursued by accusation.

Therefore, we consider Count 3 as brought under OCGA § 16-13-2 (b), misdemeanor possession of less than an ounce of marijuana.

"OCGA § 16-1-6 provides, in part, that one crime is included in another when '(i)t is established by proof of the same or less than all the facts . . . required to establish the commission of the crime charged. . . .' In determining whether one crime is included in another, this court applies the 'actual evidence' test such 'that if the state uses up all the evidence that the defendant committed one crime in establishing another crime, the former crime is included in the latter as a matter of fact. . . .' *Alvin* [*v. State*, 253 Ga. 740, 742 (1) (325 SE2d 143) (1985)]." *Hawkins v. State*, 262 Ga. 193, 194 (3) (b) (415 SE2d 636) (1992).

While a defendant may be tried for both offenses under such circumstances, he may not be sentenced for both. *Kinney v. State*, 234 Ga. App. 5, 7 (2) (505 SE2d 553) (1998).

Here, there was no evidence independent of the blood analysis which showed any possession of marijuana by Chadwick. "The pres-

ence of [marijuana] metabolites in body fluid is direct evidence only of the fact that [marijuana] was introduced into the body producing the fluid, and is not direct evidence that the person possessed the [marijuana]. Rather, the presence of [marijuana] metabolites in body fluid is only *circumstantial* or *indirect* evidence, i.e., 'evidence which only tends to establish (that the person possessed [marijuana]) by proof of various facts, sustaining by their consistency the hypothesis claimed.'" (Emphasis in original.) *Green v. State*, 260 Ga. 625, 626 (1) (398 SE2d 360) (1990).

The State having used up all the evidence in proving one crime, it was error for the court to sentence Chadwick for both charges.

*Judgment affirmed in part and vacated in part. Pope, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 2, 1999.

*Robert D. Pope*, for appellant.

*T. Joseph Campbell, District Attorney, Lance T. McCoy, Assistant District Attorney*, for appellee.