## A01A0061. GREEN v. THE STATE.
(547 SE2d 569)

MIKELL, Judge.

James Green was convicted of two counts of rape, two counts of aggravated sodomy, two counts of aggravated assault, two counts of burglary, one count of criminal attempt to commit armed robbery, and one count of possession of a firearm during the commission of a crime. He filed a motion for new trial, which the court denied. This appeal followed. We affirm Green's conviction on all counts except one count of aggravated sodomy.

The charges for which Green was convicted involved two victims. Viewed in the light most favorable to the verdict, the evidence shows that between 1:00 a.m. and 2:00 a.m. on January 16, 1998, the first victim was awakened by a man, who was later identified as Green, holding a knife to her throat. According to the victim, the man told her, "[b]itch, if you move, I'll kill you." The victim later recognized the knife as one from her kitchen. The man ripped off the victim's house-coat and forced her to perform oral sex on him. According to the victim, the man told her, "if you bite me, I'll stick this knife straight through your brain." The victim was subsequently forced to lick the man's anus. Next, the man pushed the victim down on the bed and raped her. During the course of the rape, the man ejaculated. Afterward, the man grabbed the victim by the throat and forced her to take a shower. The victim testified that before leaving, the man told her to remember to lock her windows.

The victim called 911 immediately after her attacker left. The law enforcement officers who arrived on the scene observed evidence that the attacker had gained entry into the victim's trailer home through a window. There was mud on the couch positioned below the window, and a lawn chair was found below the same window outside the home. The officers took the victim to the hospital where a rape kit was performed to preserve physical evidence.

The first victim was unable to get a sufficient look at her attacker to make an identification based on his appearance. During the subsequent investigation, she was shown a lineup that did not include Green. The victim identified a suspect by his voice, but she told the officers that she was not certain. It was later determined that the blood sample from that suspect did not match samples taken from the seminal fluid found on the victim. However, subsequent testing following his arrest for an attack on the second victim

involved in this case revealed that the seminal fluid matched Green's DNA.

The second victim was attacked on March 28, 1998. She recognized Green as her attacker, because they lived in the same trailer park, and she had seen him on the basketball court earlier that day. The second victim testified that Green lived three or four trailers down the street from hers, and that she had once allowed Green to play videogames in her home.

The second victim's sister and her three children were staying with the victim on the night of the attack, and the sister testified that Green knocked on the door earlier that night to ask if the victim was home. The sister told him that he would have to come back later, because they were asleep.

The second victim slept on her couch on the night of the attack. She was awakened by Green coming through her front door waving a gun. The victim jumped up and tried to grab Green's hands, but he forced her to lie facedown on the couch. The victim testified that Green cocked the gun, held it to her head, and told her, "I will not hesitate to kill you. . . . This is not the first trailer I done broke in [sic]." Green asked the victim if there was any money in the home. The victim could not locate her purse, so Green forced her to remove her clothing and bend over the couch while he held the gun to her back. Green removed his pants, placed his mouth on her vagina, and then "placed his penis inside her."

After the rape, Green instructed the victim to search for her purse. She was unable to locate it, and Green told her to kneel on the floor. The victim testified that she thought Green would kill her, because he kept repeating that she had seen him. Fearing for her life, the victim grabbed for Green's gun, and they began to "tussle." During the struggle, the victim bit Green and screamed for help. The noise woke the victim's sister, and she turned on the lights and grabbed the telephone, threatening to call the authorities. Green regained control of the gun, fired a shot into the ceiling, and ran out of the trailer. The victim's sister called the police.

Officer John Bailey of the Columbus Police Department responded to the 911 call. He described the victim as "extremely upset." After she calmed down, the victim told Officer Bailey that a man she knew as "Mike," who lived in the trailer park, "had broken into her trailer and raped her at gunpoint." She also provided a physical description of her attacker and told them that he drove a small blue car.

Officer Bailey and another officer walked around the trailer park and spoke with one of the residents, Willie Lee Higdon. Higdon told the officers that he did not know anyone named Mike in the area, but that Green, who fit the attacker's description, rented a room in Hig-

don's trailer, which was located next door to the first victim's home. The officers also learned from Higdon that Green drove a blue car with a Tennessee license plate and that his girlfriend lived in Holly Hills apartments. The officers proceeded to the apartment complex, where they observed a car fitting Higdon's description. After speaking with the property manager, the officers located Green's girlfriend's residence.

Officer Bailey and two other officers went to the apartment and found Green inside. Officer Bailey testified that they observed cuts and bruises on Green's hands. Green consented to a search of his vehicle. The officers recovered a gun case containing several rounds of bullets and a holster.

Next, Green and his girlfriend, Charlotte Mitchell, signed forms consenting to the search of the apartment. The officers located a .38 caliber Rossi revolver on the couch. The weapon contained four live rounds and one spent cartridge. Detective Barry Davis testified that the bullet hole in the second victim's ceiling appeared consistent with the use of a .38 caliber revolver. Green was taken into custody and subsequently indicted for the crimes of rape, aggravated sodomy, aggravated assault, sodomy, burglary, attempted armed robbery, and possession of a firearm during the commission of a crime.

At trial, a forensic scientist from the Georgia Bureau of Investigation testified that the semen sample collected from the first victim matched Green's DNA. Although a rape kit was performed on the second victim, no seminal fluid was found; therefore, DNA testing was not available for that victim. However, both the second victim and her sister identified Green as the attacker.

The jury convicted Green of all charges except one count of sodomy, on which the state entered a nolle prosequi. The court sentenced Green to two consecutive life sentences plus sixty years in prison.

1. In his first enumerated error, Green argues that there was insufficient evidence to support his convictions of the following charges: Count 2, aggravated sodomy; Count 3, aggravated sodomy; Count 6, rape; Count 8, attempted armed robbery; and Count 9, possession of a firearm during the commission of a crime. For reasons more fully explained below, we find sufficient evidence to support the convictions on all counts except one count of aggravated sodomy.

On appeal from a criminal conviction, the evidence is viewed in the light most favorable to the verdict. *Paul v. State*, 231 Ga. App. 528 (499 SE2d 914) (1998). We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt. *Williams v. State*, 233 Ga. App. 217 (1) (504 SE2d 53) (1998).

(a) *Count 2, aggravated sodomy.* This count of the indictment relates to the attack on the first victim and alleges that Green forced her to lick his anus. Green argues that the evidence was insufficient, and that the actions described do not constitute aggravated sodomy. OCGA § 16-6-2. He argues that an act involving the anus of one person and the mouth of another is not aggravated sodomy. The state concedes that this count as drawn in the indictment does not constitute the crime of aggravated sodomy and cannot stand. We agree.

Sodomy requires contact between "the sex organs of one person and the mouth or anus of another." OCGA § 16-6-2 (a). In *Moore v. State*, 212 Ga. App. 497 (442 SE2d 311) (1994), we held that a sexual act involving the anus of a defendant and the mouth of a victim did not meet the statutory definition of sodomy. Therefore, Green's conviction of the offense of aggravated sodomy under Count 2 of the indictment must be reversed and the sentence vacated.

(b) *Count 3, aggravated sodomy.* This count alleges that Green committed aggravated sodomy by forcibly placing his penis in the first victim's anus. Green argues that there was insufficient evidence to support his conviction on this charge. We disagree.

As we noted above, OCGA § 16-6-2 (a) provides that a person is guilty of sodomy when he "performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another." Sodomy committed with force and against the will of the other person constitutes the offense of aggravated sodomy under the statute.

The first victim testified that, while threatening her with a knife, Green forced her to perform oral sex on him and to lick his anus. She further testified: "He pushed me down on the bed and raped me."

We conclude that the evidence was sufficient for the jury "to infer a 'contact' between [Green's] sexual organ and the [first] victim's . . . anal area[ ]." *Griffis v. State*, 222 Ga. App. 322, 323 (1) (474 SE2d 119) (1996). "Proof of penetration is not required for a conviction of sodomy. All that is required is some contact." (Citations omitted.) Id. See also *Morgan v. State*, 226 Ga. App. 327, 329 (2) (486 SE2d 632) (1997); *Smith v. State*, 210 Ga. App. 634, 636 (2) (437 SE2d 333) (1993); *Wimpey v. State*, 180 Ga. App. 529, 530 (2) (349 SE2d 773) (1986). Whether there was contact between Green's penis and the first victim's anus was a question of fact for the jury. See *Wimpey*, supra. Because there is evidence to support the jury's verdict as to this count, we will not disturb it.

(c) *Count 6, rape.* Next, Green contends that the evidence was insufficient to support his conviction for the rape of the second vic-

tim. Specifically, Green argues that the second victim did not testify as to "which opening" Green penetrated with his penis. This argument is wholly without merit.

OCGA § 16-6-1 (a) (1) provides that "[a] person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will. . . . Carnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ."

At trial, the following testimony was elicited during the state's direct examination of the second victim:

A: He — after I took my clothes off, he took down his clothes and he — he had the gun like this and he bent down and he licked my vagina and then he came back up and he put his penis inside of me.
Q: Okay. When you say he licked your vagina, he placed his mouth on your sexual organs?
A: Yes, he did.
Q: And after that, he placed his penis inside of you?
A: Uh-huh (positive response).
Q: Okay. Did you give him consent to do either of those things?
A: No, I did not.

In addition, the victim told the police shortly after the attack that Green had "raped" her. Clearly, there was sufficient evidence for the jury to conclude that Green's sex organ penetrated the second victim's sex organ. *Richie v. State*, 183 Ga. App. 248, 249-250 (1) (358 SE2d 648) (1987). See also *Skillern v. State*, 240 Ga. App. 34, 35 (1) (521 SE2d 844) (1999).

Green's reliance on *Newton v. State*, 259 Ga. 853 (388 SE2d 698) (1990), is misplaced. In that case, the Supreme Court reversed a defendant's rape conviction because the state failed to prove penetration of the victim's sex organ by the defendant's sex organ. However, the facts of *Newton* differ significantly from the case sub judice. In *Newton*, the victim was murdered; therefore, her testimony was not available. Furthermore, there was medical evidence that her vagina had been penetrated with a wedge-shaped object. In the present case, the victim testified that Green "put his penis inside [her]" after licking her vagina. We find this evidence to be more than adequate to support the jury's finding that Green is guilty, beyond a reasonable doubt, of penetrating the second victim's sex organ with his sex organ in violation of OCGA § 16-6-1. See *Richie*, supra.

(d) *Count 8, criminal attempt to commit armed robbery.* Count 8 of the indictment, which charges Green with criminal attempt to

commit armed robbery, alleges that Green ordered the second victim to locate her sister's wallet while he pointed a pistol at her. Again, Green argues insufficiency of the evidence. We find that the evidence was such that the jury could find the elements of this crime beyond a reasonable doubt.

OCGA § 16-4-1 provides that "[a] person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." An armed robbery takes place when a person "with intent to commit theft . . . takes property of another from the person or the immediate presence of another by use of an offensive weapon. . . ." OCGA § 16-8-41 (a).

The evidence supports a finding that Green took a substantial step toward the commission of armed robbery. The second victim testified that, while threatening her with a loaded gun and after telling her that "he wouldn't hesitate to kill [her]," Green asked, "do you got [sic] any money in here?" Viewed in the light most favorable to the verdict, the evidence provides a sufficient basis for the jury's determination that Green was guilty of criminal attempt to commit armed robbery.

(e) *Count 9, possession of a firearm during the commission of a crime.* This count of the indictment charges Green with possessing a firearm during the rape and burglary of the second victim; however, the indictment erroneously refers to January 16, 1998, which was the date of the attack on the first victim. Green argues that there was no evidence that he was near the second victim on the date alleged, and, therefore, the conviction should be reversed. This argument has no merit.

"It is well settled in Georgia law that evidence of guilt is not restricted to the day mentioned in the indictment, but may extend to any day previous to the finding of the bill and within the statute of limitation for the prosecution of the offense." (Citations and punctuation omitted.) *Carpenter v. State,* 167 Ga. App. 634, 642 (9) (307 SE2d 19) (1983). The evidence summarized above provides ample support for a finding that Green possessed a firearm during the rape and burglary of the second victim.

2. Next, Green complains that the court committed reversible error when, in its jury charge, it used the word "burglary" as the underlying offense for the charge of burglary instead of the word "rape" during its recitation of the indictment. Count 10 of the indictment charges Green with burglary by entering the home of the second victim with the intent to commit rape. However, while reading the indictment during the jury charge, the court stated:

In the name and behalf of the citizens of Georgia, in count ten, charge James L. Green with the offense of burglary in

that said accused in the State of Georgia, County of Musco-
gee, on the 28th day of January, 1998[,][1] did then and there
unlawfully and without authority and with intent to commit
a felony, to wit: burglary, therein did enter the dwelling
house of another, to wit: [the second victim]. . . .

Green argues that the court committed harmful error, and that there
was no evidence to support his conviction for burglary. We disagree.

In *Martin v. State*, 246 Ga. App. 708 (541 SE2d 692) (2000), we
held that a similar misstatement by the court did not amount to
reversible error. In that case, the trial court used the word "perjury"
in place of the word "burglary" during its charge. We reasoned that
"[a]ssuming that the error was the judge's and not the reporter's,
such a slip of the tongue is not reversible error if it clearly could not
have misled or confused the jury." Id. at 710 (2). Because the court
correctly used the word "burglary" throughout the rest of the charge,
and because the jury had the correct indictment in the jury room, we
determined that the misstatement could not have misled or confused
the jury.

Similarly, in the case sub judice, the court properly referred to
rape as the underlying offense of burglary during the remainder of
the jury charge. Furthermore, the jurors had the indictment in the
jury room during their deliberations. Therefore, the court's misstate-
ment did not amount to reversible error. Additionally, we find that
the evidence amply supported Green's conviction for burglary.

3. Green assigns error to the court's refusal to excuse for cause a
juror who was a rape victim. During voir dire, a female juror told the
court that she had been raped six months earlier. The court
addressed the matter outside the presence of the other prospective
jurors and asked, "[Juror], you've told us what your problem was in
private. Can you be fair and impartial?" The juror responded, "I
believe I can."

It is well settled that the decision of whether to strike a juror for
cause lies within the sound discretion of the trial court. *Garland v.
State*, 263 Ga. 495, 496 (1) (435 SE2d 431) (1993), citing *Wilcox v.
State*, 250 Ga. 745 (301 SE2d 251) (1983). See also *Montijo v. State*,
238 Ga. App. 696, 704 (6) (520 SE2d 24) (1999), citing *Brown v. State*,
268 Ga. 354, 356 (3) (490 SE2d 75) (1997). Appellate courts will not
disturb a trial court's decision absent an abuse of discretion. *Wellons*

---

[1] We note that the indictment refers to January 28, 1998; however, the attack on the
second victim was alleged to have taken place on March 28, 1998. Green has not raised this
discrepancy on appeal. However, if he had, there would be no harmful error. As we held in
Division 1 (e), evidence of guilt is not restricted to the date mentioned in the indictment.

*v. State*, 266 Ga. 77, 84 (6) (463 SE2d 868) (1995).

We cannot conclude that the court abused its discretion in refusing to strike for cause the juror at issue. The Supreme Court has held that

> (b)efore a juror can be disqualified for cause, it must be shown that an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence.

*Garland*, supra, citing *Johnson v. State*, 262 Ga. 652, 653 (2) (424 SE2d 271) (1993). In the case sub judice, the court specifically inquired as to whether the potential juror could be fair and impartial, and she responded that she could. "The trial court therefore did not abuse its discretion in finding the juror to be impartial and in refusing to strike her for cause." *Evans v. State*, 210 Ga. App. 804, 805 (437 SE2d 495) (1993) (court did not err in refusing to strike for cause a potential juror who was a rape victim).

4. Next, Green argues that he was denied effective assistance of counsel. Green raised this argument in his motion for new trial; however, the court concluded that Green was afforded effective assistance of counsel. We affirm.

In order to establish ineffective assistance of counsel, Green must show that his trial counsel's performance was deficient and establish a likelihood that the deficient performance prejudiced his defense. *Zant v. Moon*, 264 Ga. 93, 97 (2) (440 SE2d 657) (1994). Trial counsel is presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment, and judicial scrutiny of counsel's performance must be highly deferential. *Pace v. State*, 239 Ga. App. 506, 510 (7) (521 SE2d 444) (1999).

Green first contends that his trial counsel's performance was deficient, because he did not object to the state's "golden rule" argument. During closing arguments, the prosecutor told the jury:

> Imagine you are in your bed laying [sic] there and all of a sudden[,] here is someone with a knife to your throat, ripping your clothes off, having sex with you, making you place his penis in your mouth. And not only that, telling you to lick his behind. That is just despicable, but that's what he did.

Green argues that the state impermissibly instructed the jurors to put themselves in the place of the victim, and that counsel's failure to object amounted to deficient performance that prejudiced his

defense. While counsel's failure to object to the state's argument might have been deficient performance, we cannot conclude that it prejudiced Green's defense in light of the overwhelming evidence of his guilt.

We generally disapprove of "golden rule" arguments. *Horne v. State*, 192 Ga. App. 528, 529 (2) (385 SE2d 704) (1989). See also *Burgess v. State*, 264 Ga. 777, 785 (20) (450 SE2d 680) (1994). "[A]ny argument, regardless of nomenclature, which importunes the jury to place itself in the position of the victim for any purpose must be carefully scrutinized to ensure that no infringement of the accused's fair trial rights has occurred." *Horne*, supra. Therefore, in the case sub judice, it would have been appropriate for defense counsel to object to the state's argument.

At the hearing on the motion for new trial, Green's trial counsel testified that he could not recall why he did not object to the state's improper closing argument. Therefore, we cannot determine that counsel's failure to object was the result of trial strategy. Compare *Richards v. State*, 232 Ga. App. 584, 589 (5) (502 SE2d 519) (1998).

Even if counsel's performance was deficient on this ground, "given the overwhelming evidence against [Green], we conclude that it is highly probable [the improper argument] did not contribute to the jury's verdict of guilt." See *Burgess*, supra. Accordingly, because it is unlikely that counsel's deficient performance prejudiced Green's defense, this claim of ineffective assistance of counsel must fail.

Next, Green argues ineffective assistance because his counsel did not file a motion to suppress evidence of a blood sample taken from Green. In his appellate brief, Green raises concerns regarding the lawfulness of the warrant for the blood sample and argues that his counsel should have moved to suppress that evidence.

Again, Green's claim of ineffective assistance of counsel fails. The decision of whether to file a motion to suppress is a matter of professional judgment, and we will not judge counsel's trial strategy in hindsight. *Aleman v. State*, 227 Ga. App. 607, 612 (3) (489 SE2d 867) (1997).

> Although another lawyer may have conducted the defense in a different manner and taken another course of action, the fact that defendant and his present counsel disagree with the decisions made by trial counsel does not require a finding that defendant's original representation was inadequate.

Id. "Counsel's decisions on matters of tactic and strategy, even if unwise, do not amount to ineffective assistance of counsel." *Scott v. State*, 238 Ga. App. 258, 260 (2) (518 SE2d 468) (1999).

5. Green argues that the trial court committed reversible error

by allowing a former detective to testify about the results of a blood test. As we noted above in the summary of the evidence, the first victim initially identified a suspect from a lineup that did not include Green. Sheree Tovey, a former police detective who investigated the attack on the first victim, testified that the blood sample taken from that suspect did not match the semen sample found on the victim. Green argues that this testimony was inadmissible hearsay, because Tovey did not actually test the blood and was simply repeating information she read in the lab report. OCGA § 24-3-1.

While the court may have abused its discretion by allowing Tovey to testify as to the results of the blood test, any error was harmless, given the overwhelming evidence of Green's guilt. *Cummings v. State*, 242 Ga. App. 657, 658 (1) (530 SE2d 782) (2000). Significantly, a forensic scientist testified that Green's DNA matched the semen sample taken from the victim. "Considering the overwhelming admissible evidence of [Green's] guilt, the admission of [Tovey's testimony], even if error, was harmless." *Blackmon v. State*, 272 Ga. 858, 859 (2) (536 SE2d 148) (2000).

6. Finally, Green assigns error to the court's jury charge regarding the crimes of possession of a firearm during the commission of a crime and attempted armed robbery.

He first argues that the court erred by charging the jury on the entire Code section regarding possession of a firearm during the commission of a crime. OCGA § 16-11-106 (b). According to Green, the court's instruction with respect to this count exceeded the scope of the charges against him in the indictment. "As a general rule, it is not error to charge an entire Code section even though part of the section may be inapplicable." *Buice v. State*, 239 Ga. App. 52, 59 (5) (520 SE2d 258) (1999).

> However, error arises if the indictment specifies the commission of a crime by only one of several methods possible under the statute and a reasonable probability exists that the jury convicted the defendant of committing the offense in a manner not charged in the indictment.

(Citations and punctuation omitted.) *Chadwick v. State*, 236 Ga. App. 199, 202 (2) (511 SE2d 286) (1999). In the case sub judice, the court read the indictment to the jury, and we do not find a reasonable probability that the jury convicted Green of the offense of possession of a firearm during the commission of a crime in a manner not charged in the indictment. Id.

Finally, Green argues that the court committed reversible error in its charge on criminal attempt to commit armed robbery, because it erroneously charged the jury as to the definition of robbery rather

than armed robbery. We conclude that the mistaken charge was not reversible error. "An erroneous charge on a lesser crime to that set forth in the indictment or accusation does not rise to the level of reversible error, unless such charge was harmful to the accused as a matter of law." *Mills v. State*, 244 Ga. App. 28, 29 (1) (535 SE2d 1) (2000). In this case, the court read the indictment to the jury, and the jury evaluated the evidence and determined that Green was guilty. We cannot conclude that one erroneous charge on a lesser crime was harmful to Green as a matter of law.

*Judgment affirmed in part and reversed in part. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED FEBRUARY 21, 2001 —
RECONSIDERATION DENIED MAY 9, 2001 —

*William J. Mason*, for appellant.
James Green, *pro se*.
*J. Gray Conger, District Attorney, Stacey S. Jackson, Assistant District Attorney*, for appellee.