**FIRST DIVISION
BARNES, P. J.,
MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**July 16, 2019**

# In the Court of Appeals of Georgia

A19A0872. NGUYEN v. THE STATE.

MERCIER, Judge.

Following a jury trial, Holden Nguyen was convicted of rape, statutory rape, two counts of child molestation, false imprisonment, and tampering with evidence. The trial court denied Nguyen's motion for new trial, and he appeals, challenging the sufficiency of the evidence. He also argues that the trial court made several evidentiary errors, that it erred in refusing to strike a juror for cause, and that he received ineffective assistance of counsel at trial. For reasons that follow, we affirm.

1. On appeal from a criminal conviction, we construe the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence. See *Cuzzort v. State*, 307 Ga. App. 52, 53 (1) (703 SE2d 713) (2010). We do not weigh the evidence or resolve issues of witness credibility, but merely

determine whether the evidence was sufficient for the jury to find the defendant guilty beyond a reasonable doubt. See id.

So viewed, the evidence shows that 12-year-old B. L. M. was walking home from a neighborhood store on September 4, 2012, when Nguyen drove by in a car. He waved at her, then asked whether she wanted a ride. B. L. M. accepted his offer, believing he would take her home, but he stated that he wanted to "run by his house . . . to drop something off and show [her] his cat." B. L. M. went inside the house with Nguyen, who told her to come to his bedroom so that he could photograph her. B. L. M. complied, and Nguyen took several pictures of her, remarking on her beauty.

When B. L. M. attempted to leave the room, Nguyen shoved her onto the bed. B. L. M. explained that she needed to go home, but Nguyen told her to "shut up" and began hitting her. He tied her hands, pulled down her pants, raised her shirt, and kissed her chest. Although she told him to stop, he hit her again and rubbed between her legs with his hand, touching her vagina. He then raped her.

Following the assault, Nguyen apologized, instructed her not to tell anyone, and took her home. B. L. M. texted a friend whose father was a police officer, indicating that she "was almost raped by a guy" and needed to speak with the friend's father. The father counseled B. L. M. to report the incident to her mother. She told her

2

mother generally about the incident and stated that Nguyen attempted to rape her, but did not disclose the actual rape because she was afraid. B. L. M.'s mother called the police, and B. L. M. told an officer that Nguyen had touched her sexually. She also described in detail the events leading up to the touching. Again, however, she did not report the rape.

Police searched Nguyen's home, discovering that B. L. M.'s description of the house and its contents was accurate. The officers did not find the camera referenced by B. L. M., but they located a tri-pod and a camera bag in the living room. The evidence shows that Nguyen had hidden the camera in his dishwasher, and he later asked a friend to remove it from his house. The police eventually located the camera in the friend's home. Forensic analysis of the camera and Nguyen's computer revealed that several photographs of B. L. M. had been taken with the camera, uploaded onto the computer, and subsequently deleted. During a recorded interview with police, Nguyen denied sexually assaulting B. L. M., but admitted that he picked her up in his car, drove her to his house, and took pictures of her in his bedroom.

After the incident, B. L. M. attempted suicide and was admitted to a mental health treatment facility. During a therapy session at the facility, she disclosed the rape to her therapist, and the new allegation was reported to police. A detective

conducted a forensic interview of B. L. M., who confirmed the allegation. Although B. L. M.'s mother took her for a medical examination following the rape outcry, B. L. M. refused to take part in the exam because she was frightened. The doctor who tried to examine B. L. M. testified that she was withdrawn, appeared "very disturbed," and "was sitting almost in a fetal position[.]"

The State offered similar transaction evidence from B. W., a woman who testified that, in July or August 2012, she befriended Nguyen while waiting in line at a store. Nguyen began visiting her at her home, and on several occasions, he pinned her down and forced her to perform oral sex on him. According to B. W., she told Nguyen numerous times not to return to her house, but "[h]e would not listen to me."

Based on the evidence presented, the jury found Nguyen guilty of rape, statutory rape, two counts of child molestation, false imprisonment, and tampering with evidence. Nguyen challenges his convictions, arguing that the State offered insufficient evidence to support the jury's verdict. We disagree.

(a) *Rape*. Pursuant to OCGA § 16-6-1 (a) (1), "[a] person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will[.]" The statute defines the term "carnal knowledge" as "any penetration of the female sex organ by the male sex organ." OCGA § 16-6-1 (a). On appeal, Nguyen

4

argues that the evidence does not establish that he had carnal knowledge of B. L. M. She testified, however, that Nguyen pulled down her pants and "raped" her as she screamed and tried to resist. Asked to explain what she meant by the word "rape," B. L. M. stated: "He forced his self [sic] on to me and, yeah. I don't really know how to describe it. I don't want to sound nasty or anything. But he put his self [sic] inside of me." B. L. M. responded "I believe so" when asked on cross-examination whether Nguyen "had an orgasm inside [her]." She also reported to police that Nguyen "had intercourse with her."

Although B. L. M. did not define rape in the same technical terms as the statute, "witnesses are not required to describe the acts constituting the commission of crimes in statutory or technical language in order to prove the commission of such acts." *Smith v. State*, 320 Ga. App. 408, 410-411 (1) (a) (740 SE2d 174) (2013) (punctuation omitted). The language "used by witnesses to describe criminal acts may be considered in context to provide meaning, and jurors can be presumed to have some knowledge of slang expressions in common parlance in the vernacular." Id. (citation omitted). Given the testimony presented, the jury was authorized to conclude that Nguyen had carnal knowledge of B. L. M. forcibly and against her will, in violation of OCGA § 16-6-1 (a) (1). See *Richie v. State*, 183 Ga. App. 248, 250 (1)

5

(358 SE2d 648) (1987) ("[T]he jury could reasonably infer that the 'something' defendant assaulted the victim with was his sexual organ and that the evidence was sufficient for a rational factfinder to find the appellant guilty beyond a reasonable doubt of rape.").

(b) *Statutory Rape.* A person is guilty of statutory rape when he "engages in sexual intercourse with any person under the age of 16 years and not his or her spouse, provided that no conviction shall be had for this offense on the unsupported testimony of the victim." OCGA § 16-6-3 (a). The evidence described in Division 1 (a) supports the jury's determination that Nguyen engaged in sexual intercourse with 12-year-old B. L. M. See *Smith*, supra; *Richie*, supra. And despite Nguyen's claim to the contrary, sufficient evidence corroborated B. L. M.'s testimony regarding the rape, including evidence that she tried to commit suicide after the attack; she reported the rape to her therapist and mother following the suicide attempt; she was withdrawn and disturbed when medical providers tried to examine her after the rape outcry; she accurately described the inside of Nguyen's home; she appeared in several pictures taken with – but deleted from – a camera hidden by Nguyen; and Nguyen had previously forced another individual to perform oral sex on him. See *Garner v. State*, 346 Ga. App. 351, 355 (1) (816 SE2d 368) (2018) ("[T]he quantum of corroboration

6

needed in a statutory-rape case is not that which is in itself sufficient to convict the accused, but only that amount of independent evidence which tends to prove that the incident occurred as alleged.") (citations and punctuation omitted); *Williamson v. State*, 315 Ga. App. 421, 424 (1) (b) (727 SE2d 211) (2012) ("Slight circumstances may be sufficient corroboration [in a statutory rape case], and ultimately the question of corroboration is one for the jury.") (citation omitted).

(c) *Child molestation*. In two counts, the indictment charged Nguyen with child molestation by placing his hand on B. L. M.'s vagina (Count 3) and placing his mouth upon her breast (Count 4) with the intent to arouse and satisfy his sexual desires. B. L. M. testified that prior to the rape, Nguyen pulled down her pants, raised her shirt, kissed her "chest area," and touched her vagina with his hand. Based on this evidence, the jury was authorized to find Nguyen guilty of both counts of child molestation. See OCGA § 16-6-4 (a) (1) (a person commits child molestation when he or she "[d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person"); *Hunt v. State*, 336 Ga. App. 821, 824 (1) (a) (783 SE2d 456) (2016) (victim's testimony that defendant touched her "private parts" and made her touch his penis supported child molestation convictions).

(d) *False Imprisonment.* "A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." OCGA § 16-5-41 (a). Nguyen claims that the State offered no evidence that he unlawfully detained or confined B. L. M. She testified, however, that Nguyen shoved her onto the bed when she attempted to leave the bedroom and tied her hands. Such testimony was sufficient to sustain his conviction for false imprisonment. See id.; *Reynolds v. State*, 269 Ga. App. 268, 270 (1) (c) (603 SE2d 779) (2004) (false imprisonment conviction supported by rape victim's testimony that "she tried to leave, but the rapist would not permit her to do so").

(e) *Tampering with Evidence.* A person commits the crime of tampering with evidence "when, with the intent to prevent the apprehension or cause the wrongful apprehension of any person or to obstruct the prosecution or defense of any person, he knowingly . . . conceals . . . physical evidence[.]" OCGA § 16-10-94 (a). The indictment charged that Nguyen tampered with evidence by concealing his camera with the intent to obstruct his prosecution. The evidence shows that at some point after he took pictures of B. L. M. on September 4, 2012, he hid his camera in a dishwasher, then enlisted a friend to remove it from his home. Based on this evidence,

8

the jury could infer that Nguyen concealed the camera to obstruct his prosecution, in violation of OCGA § 16-10-94 (a). See *Chastain v. State*, 255 Ga. 723, 725 (4) (342 SE2d 678) (1986) (tampering conviction supported by evidence that defendant hid murder weapon under mattress); see also *Cuzzort*, supra at 54 (1) ("Intent is a question for the jury, which is authorized to consider all other circumstances connected with the act at issue as well as the defendant's words, conduct and demeanor.") (citation and punctuation omitted).

2. Prior to trial, the State moved in limine to exclude evidence of a text message that B. L. M. sent shortly after the assault to a boy (J. F.), in which she asked J. F. to come over to her house "to chill." The prosecutor argued that Georgia's Rape Shield Statute prevented the defense from questioning B. L. M. about "asking boys to come over to [her] house an hour after [she] was supposedly raped." Nguyen countered that the evidence was relevant because "inviting friends over to come chill with her . . . [is not] consistent with a person that's been violently raped." The trial court granted the State's motion as to the specific content of the text to J. F., concluding that such evidence would raise improper "innuendo." Nguyen enumerates this ruling as error.

The Rape Shield Statute prohibits the admission of evidence relating to a rape or child molestation victim's past sexual behavior, including the victim's "general reputation for promiscuity, nonchastity, or sexual mores contrary to the community standards." OCGA § 24-4-412 (a). Challenging the trial court's exclusion of the text message, Nguyen asserts that the message "had nothing to do with [B. L. M.'s] past sexual behavior[.]" Regardless of whether such evidence fell within the Rape Shield Statute, we find no basis for reversal.

Although the trial court excluded the specific content of the text, it permitted Nguyen to establish that B. L. M. had texted J. F. and other friends after the incident. The trial court also indicated that Nguyen could ask J. F. whether B. L. M. appeared in her text to be upset. And it ruled that Nguyen could establish that B. L. M. had asked a friend to come over to her house as long as he did not explore whether this friend was a "boy or a girl."

Operating within these parameters, Nguyen questioned B. L. M. about talking with friends after she returned home on September 4, 2012. Nguyen also called J. F. and A. G., another friend of B. L. M., as witnesses. J. F. testified that B. L. M. told him about the rape via Facebook Messenger, but he did not take the allegation seriously and would not believe B. L. M. under oath. J. F. also indicated that he

10

received a text from B. L. M. on the night of September 4, 2012. A. G. testified that B. L. M. sent her a text generally describing an encounter with Nguyen. B. L. M., however, did not mention any sexual activity, and at one point during the text conversation she used terms such as "ha ha ha ha ha ha ha" and "Lololol," which A. G. testified means "Laugh Out Loud." According to A. G., she was not concerned about the encounter B. L. M. described because B. L. M. "didn't make it seem like it was a big deal" and did not "convey that she was upset[.]" A. G. further testified that B. L. M. was not known for "telling the truth all the time."

Through this evidence, Nguyen successfully raised questions about B. L. M.'s conduct following the incident, as well as her truthfulness. We fail to see how additional evidence establishing that B. L. M. asked J. F. to come to her house "to chill" would have impacted the verdict. Even if the trial court erred in excluding the content of B. L. M.'s text message to J. F., the error was harmless and does not support reversal. See *Winters v. State*, 305 Ga. 226, 229 (3) (824 SE2d 306) (2019) ("The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict.") (citations omitted).

3. Nguyen claims that the trial court improperly admitted similar transaction evidence from B. W. without first determining (a) whether the evidence was relevant,

11

and (b) whether its probative value substantially outweighed the danger of unfair prejudice, confusion of the issues, or misleading of the jury. His claim of error focuses on the trial court's process. He does not argue that the evidence was, in fact, irrelevant, unfairly prejudicial, confusing, or misleading.

In its order denying Nguyen's motion for new trial on this issue, the trial court explicitly found that the similar transaction evidence was relevant and that its probative value was not substantially outweighed by its prejudicial impact or any other factor. Nguyen has not challenged this finding or established that the evidence should have been excluded. Under these circumstances, Nguyen has not shown that the alleged procedural error impacted the outcome of the trial or harmed him. See *Andrews v. State*, 331 Ga. App. 353, 356 (2) (771 SE2d 59) (2015) ("[T]he failure to demonstrate harm from an alleged error precludes reversal.") (citation omitted).

4. Nguyen argues that the trial court erred in refusing to excuse Juror 41 for cause. The record shows that during voir dire, the prosecutor asked prospective jurors whether they or anyone they knew had been the victim of a sexual assault and, if so, whether they could fairly decide the case. Juror 41 indicated that she was sexually assaulted as a child, then stated:

And I don't know, I have a daughter now, I try not to put her in situations where anything could happen to her. So I don't know how fair I could be. . . . I might start, like, picturing things happening to my daughter. I don't know how I would react then. . . . I would like to think I would be fair but I'm not sure.

Questioned further by the prosecutor, the juror clarified: "If I felt like [the State] didn't prove the case then I would think I would be able to say not guilty," and "if you didn't do a good enough job proving your case then I would like to think I would vote not guilty.

Nguyen moved to disqualify Juror 41 for cause, asserting that she did not know whether she could be fair and impartial. Before ruling, the trial court examined the juror, asking whether she could make a decision based on the evidence and law presented, without interference from "preconceived notions." Juror 41 responded: "I think I could. I'm pretty compartmentalized and I think I could probably, I could do that." The trial court denied Nguyen's motion to strike.

In Georgia, "there is a presumption that potential jurors are impartial, and the burden of proving partiality lies with the party seeking to have the juror disqualified." *Wheeler v. State*, 327 Ga. App. 313, 314 (1) (758 SE2d 840) (2014), overruled in part on other grounds by *Willis v. State*, 304 Ga. 686, 706 n.3 (11) (a) (820 SE2d 640)

13

(2018) (citation and punctuation omitted). A trial court exercises discretion in resolving a motion to strike a juror for cause, and it is not required to remove a potential juror simply because the juror "expresses doubts about his or her impartiality or reservations about his or her ability to set aside personal experiences." Id. at 314-315 (1) (citation and punctuation omitted). Rather, a potential juror must be excused for partiality "if an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence." Id. at 315 (1) (citation and punctuation omitted).

Juror 41 expressed no such fixed opinion here. Although she was concerned that hearing the evidence would be hard, given her past experience, she stated on several occasions that she thought she could be fair and decide the case on its merits. As we have previously explained, "it is not an abuse of discretion to seat a juror who questions her ability to set aside biases so long as the juror indicates she has no unalterable fixed prejudices." *Wheeler*, supra at 316 (1) (citation and punctuation omitted). The trial court, which was uniquely positioned to observe Juror 41 and assess her ability to render an impartial verdict, did not abuse its discretion in denying Nguyen's motion to strike her for cause. See id. at 315-317 (1) (trial court properly

14

exercised its discretion in seating a juror who stated that she "would like to think" she could put her bias towards children aside in case involving child molestation and statutory rape); *Daniel v. State*, 296 Ga. App. 513, 522 (6) (675 SE2d 472) (2009) ("[T]he court is not required to excuse a potential juror where the juror indicates that she will 'try' to decide the case based upon the court's instructions and evidence.").

5. Finally, Nguyen claims that he received ineffective assistance of counsel at trial. To prevail on this claim, Nguyen "must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance." *Lupoe v. State*, 300 Ga. 233, 239-240 (2) (794 SE2d 67) (2016) (citation omitted). A defendant establishes deficient performance by demonstrating that counsel "performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms." Id. at 240 (2) (citations omitted). Prejudice is shown when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (punctuation omitted). In examining Nguyen's claim, we need not "address both components of the inquiry if [Nguyen] makes an insufficient showing on one." Id.

(a) Nguyen argues that trial counsel was deficient in not investigating and subpoenaing records relating to B. L. M.'s mental health treatment following the assault. Nguyen, however, offered no evidence regarding what those records might contain. And he has not demonstrated "what further research [into the records] would have revealed or how any additional information would have improved his position." *Lupoe*, supra at 241 (2) (b) (citation omitted). Under these circumstances, Nguyen cannot establish that trial counsel's failure to subpoena B. L. M.'s mental health records prejudiced his defense. Id.

(b) Nguyen also complains that trial counsel failed to consult with or hire an expert regarding the proper way to conduct a reliable forensic interview of a child. Again, however, he presented no evidence as to what opinions an expert might have given or how those opinions would have affected the outcome of the trial. He thus cannot show prejudice. See *Lupoe*, supra.

(c) Trial counsel did not object when the State introduced evidence of hearsay statements made by B. L. M. to her mother and police regarding the sexual assault. Nguyen now argues that counsel should have raised an objection, which would have triggered a court inquiry into the reliability of those statements under former OCGA § 24-3-16 (2012), the child hearsay statute in effect at the time of the crimes. See

16

*Laster v. State*, 340 Ga. App. 96, 99 n.2 (1) (796 SE2d 484) (2017). Pursuant to that provision:

> A statement made by a child under the age of 14 years describing any act of sexual contact . . . performed with or on the child by another . . . is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

Former OCGA § 24-3-16.

The trial court did not specifically discuss on the record the reliability of the child hearsay statements before admitting them. When denying Nguyen's motion for new trial, however, it found, based on the totality of the circumstances, that the statements "had the requisite degree of reliability to be admissible," given the spontaneity of B. L. M.'s initial outcry, the consistency of her statements, her use of age-appropriate language, and the lack of evidence that she had been coached or had an ulterior motive. The court thus concluded that the statements were properly admitted and that any objection by defense counsel would have been meritless.

A trial court has broad discretion in determining the admissibility of child hearsay statements, and we will not reverse that determination absent an abuse of

discretion. See *Hilliard v. State*, 298 Ga. App. 473, 477 (4) (a) (680 SE2d 541) (2009). Nguyen has not demonstrated that the trial court abused its discretion in finding the statements sufficiently reliable and admissible. See *Gregg v. State*, 201 Ga. App. 238, 239 (3) (a) (411 SE2d 65) (1991) ("[Reliability] finding is not a condition precedent to the admissibility of the statement [under former OCGA § 24-3-16]; rather, this statutory requirement is met if after both parties have rested, the record contains evidence which would support such a finding.") (emphasis omitted). Accordingly, he cannot establish that counsel's failure to object to this evidence constituted ineffective assistance. See *Hilliard*, supra at 478 (4) (b).

*Judgment affirmed. Barnes, P. J., and Brown, J., concur.*