## A11A0014. CULAJAY v. THE STATE.
(710 SE2d 846)

DILLARD, Judge.

Following a jury trial, Jose Culajay was convicted of two counts of trafficking in methamphetamine and one count of sale of methamphetamine. Culajay appeals his convictions and the denial of his motion for new trial, challenging the sufficiency of the evidence and arguing that the trial court erred in denying his motion to strike a prospective juror for cause and in allowing testimony that improp-

erly placed his character into evidence. For the reasons set forth infra, we affirm.

Viewed in the light most favorable to the jury's guilty verdict,[1] the evidence shows that in May 2006, an undercover officer with the Gwinnett County Drug Task Force received information from a confidential informant that Culajay was engaged in the trafficking and sale of methamphetamine. With his confidential informant's assistance, the undercover officer, posing as a drug buyer, made contact with Culajay, and on May 19, 2006, he went to Culajay's house and purchased over 50 grams of methamphetamine from Culajay. During that same meeting, Culajay provided the officer with his cell phone number, and the two discussed potential future methamphetamine transactions. On May 31, 2006, the undercover officer, accompanied this time by another undercover officer, went to Culajay's house to buy more methamphetamine. On this occasion, the officer purchased approximately 12 grams of methamphetamine from Culajay, and continued to discuss the possibility of pursuing additional drug deals with him.

Over the course of the next two months, the undercover officer remained in contact with Culajay in an attempt to set up a large purchase of methamphetamine that would also possibly lead the officer to Culajay's supplier. As a result of those discussions, on August 2, 2006, the undercover officer went to Culajay's house to finalize a purchase of two pounds of methamphetamine. Upon arriving there, Culajay entered the officer's vehicle and directed him to drive to a gas station just off of a nearby interstate. Unbeknownst to Culajay, the undercover officer was wearing a wire, which communicated everything that was being said to the drug task force surveillance teams following closely behind them.

A few minutes after the officer and Culajay arrived at the gas station, a red pickup truck containing two males pulled into the parking lot, and the two men motioned for the officer and Culajay to follow them. Shortly thereafter, the officer and Culajay arrived at a house just outside of Duluth and went inside to the kitchen where they met with five or six other people to negotiate the deal. Eventually, the officer agreed to buy two pounds of methamphetamine for $15,500. Following this discussion, one of the men went upstairs and returned to the kitchen carrying a plastic container filled with a large quantity of methamphetamine separated into several plastic bags. After examining the container, the undercover officer told Culajay and the others that he would leave to obtain the

---

[1] *See, e.g., Goolsby v. State*, 299 Ga. App. 330, 330-31 (682 SE2d 671) (2009); *see also Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

money and return soon to complete the purchase.

Upon leaving the house, the undercover officer went to obtain a search warrant, while the surveillance teams stayed at the scene to keep the house under close observation. However, a few minutes after the undercover officer left the premises, the surveillance team observed Culajay exit the house and make a call on his cell phone. And fearing that Culajay and the other suspects were becoming suspicious, the surveillance team immediately moved in and arrested Culajay and the others as they attempted to flee. Once the search warrant was obtained, the officers searched the house and recovered over 244 grams of methamphetamine.

Thereafter, Culajay was indicted on one count of trafficking in methamphetamine, related to the May 19, 2006 sale; one count of sale of methamphetamine, related to the May 31, 2006 sale; one count of trafficking in methamphetamine, related to the August 2, 2006 sale;[2] and one count of criminal attempt to sell methamphetamine, also relating to the August 2006 sale. During his and a co-defendant's trial, the undercover officer and members of the Drug Task Force surveillance team testified regarding their respective roles in the investigation of the case and Culajay's arrest. Additionally, a forensic chemist with the GBI confirmed (1) that the substances recovered by the officers on each of the dates in question were methamphetamine and (2) the weight of the drugs recovered on those respective dates. At the trial's conclusion, the jury found Culajay guilty on both counts of trafficking in methamphetamine and on the count of sale of methamphetamine, but not guilty on the count of attempt to sell methamphetamine. Subsequently, Culajay filed a motion for new trial, which the trial court denied after conducting a hearing on the matter. This appeal follows.

1. Culajay contends, generally, that the evidence is insufficient to support his convictions of trafficking in and the sale of methamphetamine. We disagree.

When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[3] We do not weigh the evidence or determine witness credibility "but only determine whether a rational trier of fact could have found the defendant[ ] guilty of the charged offenses beyond a reasonable doubt."[4] Accordingly, the jury's verdict will be upheld "[a]s long as there is some

---

[2] Several of the parties to this sale, including co-defendant Jimenez-Ramirez, were also charged with trafficking in this same count of the indictment.

[3] *See, e.g., English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010).

[4] *Lott v. State*, 303 Ga. App. 775, 775-76 (1) (694 SE2d 698) (2010) (citing *Jackson*, 443 U. S. at 319 (III) (B)).

competent evidence, even though contradicted, to support each fact necessary to make out the State's case[.]"[5]

A person commits the offense of trafficking in methamphetamine when that person "knowingly sells, delivers, or brings into this state or has possession of 28 grams or more of methamphetamine. . . ."[6] It is likewise unlawful for any person to "manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute any controlled substance" in any amount,[7] including methamphetamine.[8]

And here, the evidence shows that Culajay sold more than 28 grams of methamphetamine to the undercover officer on May 19, 2006, and that he also sold a smaller quantity to the officer on May 31, 2006. Accordingly, the evidence is sufficient to support Culajay's convictions for trafficking in[9] and the sale of methamphetamine[10] related to those two dates. Furthermore, the evidence also authorized the jury to find that Culajay participated in the August 2, 2006 drug deal, and thus that he "was, at a minimum, a party to trafficking in methamphetamine"[11] on that date.[12]

2. Culajay further contends that the trial court erred in denying his challenge to strike a prospective juror for cause and, therefore, he was improperly required to exercise a peremptory strike. We disagree.

Georgia law presumes that "potential jurors are impartial, and the burden of proving partiality lies with the party seeking to have the juror disqualified."[13] Additionally,

> [w]hether to strike a juror for cause lies within the sound discretion of the trial court, and a trial court is not obligated to strike a juror for cause in every instance where the potential juror expresses doubts about his or her impartial-

---

[5] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (citation and punctuation omitted).

[6] OCGA § 16-13-31 (e).

[7] OCGA § 16-13-30 (b).

[8] OCGA § 16-13-26 (3) (B).

[9] *See* OCGA § 16-13-31 (e); *see, e.g.*, *Martinez v. State*, 303 Ga. App. 166, 169-70 (1) (692 SE2d 766) (2010) (holding that defendant's sale of more than 28 grams of methamphetamine to undercover officer was sufficient to support defendant's trafficking conviction)

[10] *See* OCGA §§ 16-13-30 (b), 16-13-26 (3) (B); *see, e.g.*, *Williamson v. State*, 300 Ga. App. 538, 541 (1) (685 SE2d 784) (2009) (holding that three separate sales of methamphetamine to undercover officer was sufficient evidence to support defendant's convictions on sale charges).

[11] *Casanova v. State*, 285 Ga. App. 554, 555 (1) (646 SE2d 754) (2007).

[12] *See* OCGA § 16-2-20; *Navarro v. State*, 293 Ga. App. 329, 331 (667 SE2d 125) (2008) (holding that evidence was sufficient to support trafficking conviction when defendant participated in drug-deal discussions); *Casanova*, 285 Ga. App. at 555 (1) (same).

[13] *Chatman v. State*, 283 Ga. App. 673, 674 (1) (642 SE2d 361) (2007) (footnote omitted).

ity or reservations about his or her ability to set aside personal experiences.[14]

Moreover, "[t]he trial judge is uniquely positioned to observe a potential juror's demeanor and thereby to evaluate his or her capacity to render an impartial verdict."[15] Nevertheless, "[t]he court must excuse a potential juror for cause based on the juror's partiality . . . if an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence."[16]

But here, we see no basis for second guessing the trial court's refusal to strike the prospective juror in question for cause. During voir dire, this prospective juror indicated that he had bad experiences with a particular attorney. And when questioned about those past experiences by the State's prosecutor, the prospective juror responded, "I don't like the idea that justice can be bought, in my opinion. A lot of times — the O.J. Simpson case, to me, points it out better than any. . . . I just, you know, I don't trust all lawyers." When pressed further on this issue, the prospective juror stated, "But something probably brought everybody here that has been accused, so they have to have some support. It's part of the system. But, again, I have a problem with the trust and the whole thing. It is just an ethical issue to me." In response to questions from the co-defendant's counsel, the prospective juror again stated that he thought the State had to have some evidence for someone to be accused but that such evidence could be planted by the police. Later, in response to questions from Culajay's counsel, the prospective juror claimed that he would not be able to "[e]thically" do defense counsel's job. Nevertheless, the prospective juror also stated that he would do his best to be impartial and would wait to hear the evidence before making any decision about guilt or innocence. Furthermore, when asked by the trial court whether he could set aside his personal feelings, listen to the evidence, and render an impartial verdict, the prospective juror replied that he thought he could do so.

Given the foregoing, we find that the trial court did not err in concluding that the prospective juror in question had not formed a fixed or definite opinion regarding Culajay's guilt or innocence.[17]

---

[14] *Blankenship v. State*, 301 Ga. App. 602, 605 (3) (688 SE2d 395) (2009) (citation and footnote omitted); *see also Garrett v. State*, 280 Ga. 30, 31 (2) (622 SE2d 323) (2005) (same).

[15] *Blankenship*, 301 Ga. App. at 605 (3) (citation and footnote omitted).

[16] *Chatman*, 283 Ga. App. at 674 (1) (footnote omitted).

[17] *See Blankenship*, 301 Ga. App. at 605-06 (3) (holding that trial court did not abuse its discretion in denying for-cause challenges to jurors who stated their belief that an innocent

Indeed, as we have previously explained, it is "not an abuse of discretion to seat a juror who questions [his] ability to set aside biases so long as the juror indicates [he] has no unalterable fixed prejudices."[18] Accordingly, the trial court did not abuse its discretion in denying Culajay's challenge for cause as to this prospective juror.

3. Culajay also contends that the trial court erred in allowing testimony that improperly placed his character into evidence. Once again, we disagree.

At the outset, we note that "admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse."[19] And here, during the redirect examination of the undercover officer who purchased the methamphetamine from Culajay, the State's prosecutor asked if Culajay looked "substantially the same" as he did on the date of the last drug sale. The undercover officer replied, "No. He's lost a little bit of weight since he's been in jail." Almost immediately thereafter, the co-defendant's counsel requested a bench conference, and later, once the jury recessed for lunch, Culajay's counsel lodged an objection to the officer's comments, which the trial court overruled on the ground that the comment was not prejudicial.[20]

On appeal, Culajay argues that the trial court erred in overruling his objection because the officer's testimony, stating that Culajay had been in jail, improperly placed his character into evidence and was therefore prejudicial. Culajay is mistaken. As we have previously explained, "evidence that an accused has been confined in jail in connection with the case at issue does not place his character into evidence."[21] Accordingly, the trial court did not abuse its discretion in

---

defendant should testify in his own behalf when jurors indicated that they would be able to put aside what they felt and follow the law); *Daniel v. State*, 296 Ga. App. 513, 520-22 (6) (675 SE2d 472) (2009) (holding that trial judge did not err in failing to dismiss juror who expressed bias toward children when she further stated that she would listen to the evidence and follow the law); *Chatman*, 283 Ga. App. at 674-75 (1) (holding that jurors who expressed personal biases but stated they could be fair did not require their dismissal).

[18] *Daniel*, 296 Ga. App. at 522 (6).

[19] *Smith v. State*, 302 Ga. App. 128, 130 (1) (690 SE2d 449) (2010) (citation, punctuation and footnote omitted).

[20] The State argues that Culajay waived review of this issue on appeal by failing to object at the time the officer made the allegedly improper comment. This argument, however, is belied by the record. During an earlier discussion concerning how objections should be handled by the parties, the trial court stated that "with respect to anything said at the bench, any rulings made, there is no waiver. We're not going on the record at that point. You can come back to it at the next opportunity when the jury is out, and I will give you an opportunity to perfect the record as you wish." Our review of the record indicates that Culajay's counsel complied exactly as the trial court directed.

[21] *Jackson v. State*, 284 Ga. 484, 486 (2) (668 SE2d 700) (2008) (citation and punctuation omitted); *see also Smith*, 302 Ga. App. at 133 (1) (c) (same); *Fields v. State*, 176 Ga. App. 122,

overruling Culajay's objection to the undercover officer's testimony.
*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED MAY 19, 2011.

*Jonathan D. Aurelia*, for appellant.
*Daniel J. Porter, District Attorney, Karen M. Harris, Assistant District Attorney*, for appellee.

---

123 (335 SE2d 466) (1985) (holding that "evidence that an accused is presently confined in jail does not place his character in evidence").