**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**May 16, 2014**

# In the Court of Appeals of Georgia

A14A0125. WHEELER v. THE STATE.

DILLARD, Judge.

Following trial, a jury convicted Weyman E. Wheeler on one count of enticing a child for indecent purposes. Wheeler appeals his conviction and the denial of his motion for new trial, arguing that the trial court erred in denying his motion to strike a prospective juror for cause, excluding evidence that would have impeached the victim's credibility, charging the jury on the full statutory definition of enticing a child for indecent purposes rather than narrowing the definition to match the allegations in the indictment, failing to adequately respond to the jury's question regarding the definition of child molestation, and failing to charge the jury regarding the definition of indecent acts or purposes. For the reasons set forth *infra*, we affirm Wheeler's conviction.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that in late February or early March 2011, Weyman met 15-year-old M. N. through his son, who attended the same school as the young girl. Over the course of the next several weeks, M. N. increasingly spent more time with Weyman. Specifically, she frequently went with Weyman and his son to the gym, joined them for boating excursions on the lake, and spent time at their home watching movies. According to M. N., some time in late March 2011, she and Weyman began a sexual relationship, with M. N. sneaking out of her house late at night and going over to Weyman's home a few blocks away.

According to M. N., her sexual relationship with Weyman continued over the course of the next few months. But in May 2011, one of M. N.'s friends, who knew about the alleged relationship, decided that M. N.'s mother should know what was happening. Consequently, M. N.'s friend told another friend to inform his mother, who was a friend of M. N.'s mother, about the alleged relationship. And shortly thereafter, the friend's mother informed M. N.'s mother of same. M. N.'s mother and father then confronted M. N., at which point she admitted that she and Weyman were involved in a sexual relationship.

---

[1] *See, e.g.*, *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

Weyman was thereafter charged, via indictment, with one count of aggravated child molestation, one count of child molestation, one count of statutory rape, and one count of enticing a child for indecent purposes. At the conclusion of his trial, the jury acquitted Weyman on the aggravated-child-molestation charge, failed to reach a verdict on the child-molestation and statutory-rape charges, but convicted him on the enticing-a-child-for-indecent-purposes charge. Subsequently, Weyman filed a motion for new trial, which the trial court denied after a hearing. This appeal follows.

1. Weyman first contends that the trial court erred in denying his motion to strike a prospective juror for cause. We disagree.

Under Georgia law, there is a presumption that potential jurors are impartial, and the burden of proving partiality "lies with the party seeking to have the juror disqualified."[2] Furthermore, whether to strike a juror for cause lies within the sound discretion of the trial court, and a trial court "is not obligated to strike a juror for cause in every instance [in which] the potential juror expresses doubts about his or her impartiality or reservations about his or her ability to set aside personal

---

[2] *Culajay v. State*, 309 Ga. App. 631, 634 (2) (710 SE2d 846) (2011) (punctuation omitted).

3

experiences."[3] Indeed, the trial judge is uniquely positioned to "observe a potential juror's demeanor and thereby to evaluate his or her capacity to render an impartial verdict."[4] But the trial court must excuse a potential juror for cause based on the juror's partiality, if an opinion held by the potential juror is "so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence."[5]

Here, during *voir dire*, the prospective juror in question responded affirmatively when Wheeler's trial counsel posed a general query to the pool regarding whether the nature of the allegations in this matter would make it impossible for the jurors to be fair. Later, the State's prosecutor questioned the prospective juror about her earlier response, asking why the allegations in the case would make it hard for her to be fair. The juror responded as follows: "I guess I'm just prejudiced to children. And to hear they've been abused—I don't know. My heart just goes out to them." The State's prosecutor then asked whether she could put this bias aside, and the prospective juror responded "I would like to think I could, but I'm

---

[3] *Id.* at 634-35 (punctuation omitted).

[4] *Id.* at 635 (punctuation omitted).

[5] *Id.* (punctuation omitted).

4

still—seem to always be on the child's side when I hear these things on TV or wherever." And when pressed further, the juror stated, "I mean, I hope I could be fair, but I'm just prejudiced, I guess toward children."

Thereafter, Wheeler's trial counsel and the prospective juror engaged in the following colloquy:

Q: Would it be safe to say that you would like to be fair, you would hope to be fair, but at the end of the day, because of your strong feelings, you just really can't be fair?

A: I hate to admit that but . . . I mean, I would want to be fair. Like you say, I want people to be fair with me. . . . But I've just got a weak spot for children that are taken advantage of.

Q: I hear you. Don't let me put words in your mouth, but I think what I hear you saying is you want to be, you would like to be, you would hope to be, but in the end, you just can't be?

A: No, I didn't say "can't be."

Q: Okay. It would be difficult for you to be fair.

A: It would be maybe difficult, yeah.

. . .

5

Q: And you're clearly struggling with that issue, and so let me ask you this way: In your heart of hearts, do you think you can be fair?

A: I would like to think I could be fair.

 . . .

Q: You think because of your feelings for children you would be biased in favor of the children?

A: Yes.

Q: And prejudiced in their favor?

A: Yes.

Q: Which means you would be prejudiced against Mr. Wheeler by inference, correct?

A: I guess. Maybe.

 . . .

Q: Do you think that would color your deliberations, would color the way you listen to the evidence? . . . Influence you. You would have this nagging feeling that no matter what, you would be inclined to believe what these children said?

A: Well, I would hate to think when I heard all the evidence that I would, no matter what, just take one side or the other. I would like to think I am the kind of person that would listen to all of it. . . .

Based on this exchange, Wheeler's trial counsel moved for the prospective juror to be struck for cause. But the State objected, and the trial court denied the motion. Ultimately, Wheeler used one of his peremptory strikes to exclude this prospective juror.[6] Nevertheless, given the foregoing, we find that the trial court did not err in concluding that the prospective juror had not formed a fixed or definite opinion regarding Wheeler's guilt or innocence.[7] Indeed, we have previously explained that it is "not an abuse of discretion to seat a juror who questions her ability to set aside biases so long as the juror indicates she has no unalterable fixed

---

[6] We note that the State argues that Wheeler has not demonstrated harm because the record does not show that he exhausted his peremptory strikes. But the Supreme Court of Georgia has abandoned this rule, holding that "[t]he defendant's use of his peremptory strikes will . . . no longer play a role in our evaluation of the harm caused by the refusal to strike an unqualified juror." *Harris v. State*, 255 Ga. 464, 465 (2) (339 SE2d 712) (1986).

[7] *See Daniel v. State*, 296 Ga. App. 513, 520-22 (6) (675 SE2d 472) (2009) (holding that trial court did not err in failing to dismiss juror who expressed bias toward children when she further stated that she would listen to the evidence and follow the law); *Chatman v. State*, 283 Ga. App. 673, 674-75 (1) (642 SE2d 361) (2007) (holding that jurors who expressed personal biases, but stated they could be fair, did not require dismissal).

prejudices."[8] Accordingly, the trial court did not abuse its discretion in denying Wheeler's challenge for cause as to this prospective juror.

2. Wheeler also contends that the trial court erred in excluding a hard copy of the victim's post on the social-media website Twitter, which would have impeached the victim's credibility. We disagree.

At the outset, we note that, as a general rule, "admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse."[9] And printouts from electronic-computer sources are subject to the same rules of evidence as other documents.[10]

Here, while cross-examining M. N., Wheeler's trial counsel asked whether she had ever posted (*i.e.*, "tweeted") anything about Wheeler on her Twitter[11] profile page

---

[8] *Daniel*, 296 Ga. App. at 522 (6).

[9] *Smith v. State*, 302 Ga. App. 128, 130 (1) (690 SE2d 449) (2010) (punctuation omitted).

[10] *See Burgess v. State*, 292 Ga. 821, 823 (4) (742 SE2d 464) (2013); *Smoot v. State*, 316 Ga. App. 102, 109 (4) (a) (729 SE2d 416) (2012).

[11] "Twitter is an online social networking service and microblogging service that enables its users to send and read text-based messages of up to 140 characters, known as 'tweets.'" http://en.wikipedia.org/wiki/Twitter (site last visited April 1,

and home timeline.[12] In response, M. N. admitted to having a Twitter account, but denied ever tweeting about Wheeler. At that point, the jury was excused, and Wheeler's counsel moved to introduce a printout of a screenshot[13] of M. N.'s Twitter profile page, in which M. N. posted "my heart cries out for you. no matter how much i want you, ill [sic] never have." Specifically, counsel argued that this tweet supported the defense theory that M. N. was obsessed with Wheeler and that this obsession had no basis in reality. However, after noting that M. N.'s tweet did not mention Wheeler by name, the trial court ruled that Wheeler had failed to establish the relevance of this tweet and denied his request.

Nevertheless, later during the trial, M. N.'s friend, who knew about M. N.'s alleged relationship with Wheeler, testified on cross-examination that M. N. had in fact tweeted about Wheeler. And based on this testimony, Wheeler's trial counsel asked the trial court to reconsider its earlier ruling excluding the screenshot of the

_____

2014).

[12] *See* https://support.twitter.com/articles/119138-types-of-tweets-and-where-they-appear (noting that "normal tweets" appear on the sender's "profile page and home timeline") (last visited April 17, 2014).

[13] A "screenshot" is "an image that shows the contents of a computer display." Merriam–Webster, http:// www. merriam- webster. com/ dictionary/screenshot (last visited March 24, 2014).

tweet. The court refused to do so. But immediately thereafter, and in the presence of the jury, Wheeler's counsel read the entire tweet to M. N.'s friend, who confirmed that M. N. had tweeted it and that it was about Wheeler—even though he was not mentioned by name in the tweet.

Given the foregoing, even assuming the trial court erred in excluding the actual screenshot of the tweet in question, we conclude that reversal is not required because the tweet was essentially admitted into evidence by being read to the jury and used to impeach M. N.'s credibility through the testimony of M. N.'s friend. Accordingly, we find it highly probable that exclusion of the screenshot did not affect the outcome of the proceedings.[14]

3. Wheeler also contends that the trial court erred in charging the jury on the full statutory definition of enticing a child for indecent purposes rather than narrowing the definition to match the allegations in the indictment. Once again, we disagree.

---

[14] *See Boothe v. State*, 293 Ga. 285, 294 (3) (745 SE2d 594) (2013) (holding that any error in excluding impeachment evidence about witness's drug use in general was harmless, when witness was heavily impeached in other ways); *Mitchell v. State*, 293 Ga. 1, 2-3 (3) (742 SE2d 454) (2013) (holding that error, if any, in excluding portion of defendant's statement to police was harmless because similar evidence was admitted through the testimony of another witness).

It is well established that trial courts should tailor their charges to match the allegations of indictments, "either by charging only the relevant portions of the applicable Code sections or by giving a limiting instruction that directs the jury to consider only whether the crimes were committed in the manner alleged in the indictment."[15] And in reviewing an allegedly erroneous jury instruction, we apply the "plain legal error standard of review."[16]

Initially, it is important to note that Wheeler did not object to any portion of the trial court's jury charges, and under OCGA § 17-8-58, "[a]ny party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate."[17] And the failure to so object precludes "appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects the substantial rights of the parties."[18] In such cases, as the

---

[15] *Daniels v. State*, 310 Ga. App. 562, 565 (2) (714 SE2d 91) (2011) (punctuation omitted).

[16] *Id.*

[17] OCGA § 17-8-58 (a).

[18] *Alvelo v. State*, 290 Ga. 609, 615 (5) (724 SE2d 377) (2012) (punctuation omitted).

11

Supreme Court of Georgia has explained, "the proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings."[19] Thus, because Wheeler failed to object whatsoever to the jury charges, our review is limited to consideration in this regard.[20]

In the case *sub judice*, Count 4 of the indictment charged Wheeler with the offense of enticing a child for indecent purposes by alleging that he "did take [M. N.], a child under 16 years of age, to the residence of said accused for the purpose of indecent acts, in violation of OCGA § 16-6-5, contrary to the laws of said State, the good order, peace and dignity thereof." And during its jury charges, the court instructed the jury on the enticing-a-child-for-indecent-purposes offense as follows: "A person commits the offense of enticing a child for indecent purposes when that person solicits, entices or takes any child under the age of 16 to any place for the purpose of indecent acts."

Wheeler argues that in charging the jury on the full statutory definition of enticing a child for indecent purposes, the trial court committed plain error because

---

[19] *Id.* (punctuation omitted).

[20] *See* OCGA § 17-8-58 (b); *see also King v. State*, 317 Ga. App. 834, 837 (1) (733 SE2d 21) (2012).

the court allowed the jury to believe that it could convict him if he "solicited" or "enticed" M. N. to his home for the purpose of indecent acts rather than limiting the jury's consideration to whether he "took" M. N. to his home for that purpose (as alleged in the indictment).

It is true that a criminal defendant's right to due process may be endangered when "an indictment charges the defendant with committing a crime in a specific manner and the trial court's jury instruction defines the crime as an act which may be committed in a manner other than the manner alleged in the indictment."[21] And the giving of a jury instruction which deviates from the indictment violates due process when "there is evidence to support a conviction on the unalleged manner of committing the crime and the jury is not instructed to limit its consideration to the manner specified in the indictment."[22] But pretermitting whether there was evidence that Wheeler "enticed" or "solicited" M. N., we find no due-process violation in this instance because "[w]hile instructing the jury that a crime can be committed in a manner different from that charged in the indictment can constitute reversible error,

---

[21] *Machado v. State*, 300 Ga. App. 459, 462 (5) (685 SE2d 428) (2009) (punctuation omitted).

[22] *Id.* (punctuation omitted).

13

a reversal is not mandated [when], as here, the charge as a whole limits the jury's consideration to the specific manner of committing the crime alleged in the indictment."[23] And indeed, in the case *sub judice*, the trial court instructed the jury that the State had the burden of proving every material allegation in the indictment beyond a reasonable doubt, further instructed that the jury could only find the defendant guilty if it found beyond a reasonable doubt that he committed the offenses "as described in the indictment," and sent the indictment out with the jury during its deliberations. Accordingly, these instructions, when considered in their entirety, cured any potential error pertaining to the enticing-a-child-for-indecent-purposes charge.[24]

---

[23] *Id.* (punctuation omitted).

[24] *See id.* at 462-63 (5) (holding that trial court's jury instructions as a whole, which indicated that defendant could only be found guilty if the State proved every material allegation in the indictment, cured any potential problem that may have occurred when the court charged the entirety of the child-molestation statute); *Stephens v. State*, 255 Ga. App. 680, 684-85 (6) (569 SE2d 250) (2002) (noting that "[a]s a general rule, it is not error to charge an entire Code section even though part of the section may be inapplicable," and holding that charging the jury on the entire child-molestation statute, despite the narrower language in the indictment, was not error when the court also instructed the jury that the State must prove the offense as charged in the indictment).

4. Wheeler further contends that the trial court erred when it responded to the jury's question as to whether child molestation "requires sex" by instructing the jury to review its copy of the charges and the indictment regarding child molestation. Again, we disagree.

We first note that the "need, breadth, and formation of additional jury instructions are left to the sound discretion of the trial court."[25] And here, shortly after beginning its deliberations, the jury submitted a note to the trial court asking as follows: "Does child molestation require sex?" Then, during the ensuing discussion between counsel and the trial court as to how to best address the jury's question, Wheeler's trial counsel agreed that "[s]ex is not a legal term" and further suggested that the court tell the jury to refer back to the jury charge and indictment. The jury was brought back into the courtroom, and the trial court did exactly as defense counsel suggested. Thus, because Wheeler explicitly agreed with this approach, he has waived review of this issue on appeal.[26]

---

[25] *Tidwell v. State*, 312 Ga. App. 468, 474 (4) (718 SE2d 808) (2011) (punctuation omitted).

[26] *See Lake v. State*, 293 Ga. 56, 57 (3) (743 SE2d 414) (2013) (holding that defendant failed to preserve for appeal argument that trial court inadequately recharged the jury after jury requested a written definition of a charge when, after discussing the issue, defendant explicitly agreed with trial court's response to the

5. In his final enumeration of error, Wheeler contends that the trial court erred in failing to charge the jury on the definition of "indecent acts" or "purposes." But in the section of his appellate brief supposedly dedicated to this contention, Wheeler appears, instead, to reassert his argument that the trial court erred in providing the full statutory definition on enticing a child for indecent purposes, which he contends allowed him to be convicted in a manner not alleged in the indictment. Regardless, we disagree.

First, the terms "indecent act" or "indecent purpose" require no further definition because they are terms that are well within the knowledge of the average person.[27] Additionally, to the extent that Wheeler is reasserting his contention that the trial court erred in charging the jury on the full statutory definition of enticing a child for indecent purposes rather than narrowing the definition to match the allegations in

---

jury's request); *see also Cheddersingh v. State*, 290 Ga. 680, 682-83 (2) (724 SE2d 366) (2012) (explaining that affirmative waiver, as opposed to mere forfeiture by failing to object, prevents a finding of "plain error" under OCGA § 17-8-58 (b)).

[27] *See Jackson v. State*, 274 Ga. App. 26, 31 (4) (619 SE2d 294) (2005) (holding that the term "indecent act" required no further definition); *see also Millhollan v. State*, 221 Ga. 165, 169 (4) (143 SE2d 730) (1965) (holding that statute making it a crime to take "immoral, improper, or indecent liberties with a child," or to commit "lewd or lascivious act upon the body or any part or member thereof of such child," does not violate due process because it fails to define the quoted language).

16

the indictment, as we held in Division 3, *supra*, the trial court's instruction to the jury that the State was required to prove the offense as charged in the indictment cured any potential problems with the enticing-a-child-for-indecent-purposes charge and did not constitute plain error.

*Judgment affirmed. Doyle, P. J., and Miller, J., concur.*