**FOURTH DIVISION
DILLARD, P. J.,
MERCIER and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**July 27, 2021**

# In the Court of Appeals of Georgia

A21A0793. GOFORTH v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Bobby Goforth on four counts of being a party to the sale of methamphetamine and three counts of being a party to trafficking in methamphetamine. On appeal, Goforth challenges the sufficiency of the evidence supporting his convictions and further argues that the trial court erred in allowing two witnesses to testify as to his identity in surveillance photographs and videos. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that in early 2016, a detective with the Gordon County Sheriff's Office obtained information that Goforth and his friend, Timothy Lumpkin, were involved in the sale

---

[1] *See, e.g.*, *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018).

of methamphetamine in the Calhoun area. As a result, the detective instructed a confidential informant—who had known Goforth for a while—to set up a controlled purchase of methamphetamine. Then, on February 9, 2016, the CI called Goforth—with the detective listening in on the call—and asked to buy methamphetamine. Goforth agreed and told the CI to meet him at a local motel. The detective then wired the CI, gave her $200 in bills (after copying the serial numbers), and followed her to the motel to conduct surveillance. At the motel, the CI purchased two "eight balls" (three-and-one-half grams each) of methamphetamine from Lumpkin for the $200. Following the buy, Goforth called the CI and told her that there was "plenty more where that came from."

On February 17, 2016, the CI called to make another purchase of methamphetamine—with the detective again listening in on the conversation—and spoke with both Goforth and Lumpkin. And this time, Lumpkin directed the CI to meet at a nearby Home Depot. The detective then gave the CI another $200, similarly with serial numbers that had been copied, and also set her up with a wire so the transaction could be recorded. Shortly thereafter, while under surveillance, the CI met Lumpkin in the parking lot of the Home Depot and purchased two more eight balls of methamphetamine.

One week later, on February 24, 2016, the detective had the CI make a call to Goforth to set up another methamphetamine purchase, while again listening in on the conversation. But this time, the CI asked to buy an ounce and a quarter of methamphetamine, and Goforth told her to meet at a local fast food restaurant. The detective then gave the CI $700 in cash—that, again, had been photocopied—and followed her to the restaurant to monitor the transaction. And in the restaurant's parking lot, the CI met Lumpkin and exchanged the cash for drugs.

The final transaction occurred on March 17, 2016, after the CI contacted Goforth via a Facebook message. Goforth instructed the CI to meet him at another motel in Calhoun. Once again, prior to the meeting, the detective gave the CI $1,000 (which had been copied), had her wear a wire, and followed her to the motel to conduct surveillance. Then, upon arriving at the motel, the CI met Goforth, who directed her to room 127. And once she was inside the room, the CI discussed the transaction with Goforth and Lumpkin, and while they were speaking she noticed a large plastic bag filled with what she believed to be methamphetamine. Subsequently, the CI gave Lumpkin the money in exchange for the drugs.

The following day, March 18, 2016, the detective obtained a warrant to search the motel room where the CI purchased drugs the day before. And when the detective

3

and several other sheriff's deputies arrived, they encountered Goforth and Lumpkin just outside room 127 and placed both of them, as well as two women who were in the room, under arrest. Inside the motel room, the deputies found 43 grams of methamphetamine in a black camera case and 1.5 grams of the drug in two separate plastic bags that were inside a black nylon bag laying on the room's dresser. Underneath the room's bathroom sink, the deputies found a plastic bag containing approximately 221 grams of methamphetamine, and in a purse, they recovered another 224 grams of the drug. The purse also contained a notebook, in which drug transactions had been recorded, and the deputies observed a small handgun, scales, and packaging materials on the room's bed. Additionally, in searching Lumpkin's car (which was parked in the lot just outside the motel room), the deputies recovered $4,400 in cash, with $1,000 matching the serial numbers of the money the detective gave to the CI for the previous controlled purchases.

Thereafter, the State charged Goforth and Lumpkin, via the same indictment, with four counts of being a party to the sale of methamphetamine, three counts of being a party to trafficking in methamphetamine, and one count of possession of a firearm during the commission of a felony. Also in the same indictment, the State charged the two women in the motel room on the day the warrant was executed,

4

Stephanie Baldwin and Heather Jones, with one count of being a party to trafficking in the methamphetamine that was recovered during the search and one count of possession of a firearm during the commission of a felony. The case then proceeded to trial, during which the State presented the aforementioned evidence through the testimony of the CI and the detective. In addition, the State called a Georgia Bureau of Investigation forensic chemist, who testified that the substances purchased by the CI and recovered from the motel room constituted various weights of methamphetamine. The State also introduced several recordings of phone calls Goforth made while in pre-trial detention following his arrest, in which he discussed—indeed bragged about—his drug-selling business.

At the conclusion of the trial, the jury found Goforth and Lumpkin guilty on all charges except the possession-of-a-firearm-during-the-commission-of-a-felony charge. The jury acquitted Baldwin on both charges, acquitted Jones on the possession-of-a-firearm-during-the-commission-of-a-felony charge, but found her guilty on the trafficking charge, albeit for a smaller amount than alleged in the indictment. Subsequently, Goforth obtained new counsel and filed a motion for new trial, which the trial court denied after holding a hearing on the matter. This appeal follows.

1. Goforth first contends that the evidence was insufficient to support his convictions on the charges of being a party to the sale of methamphetamine and the trafficking of methamphetamine. We disagree.

When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[2] And, of course, in evaluating the sufficiency of the evidence, we "do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[3] The jury's verdict will be upheld, then, so "long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[4] Bearing these guiding principles in mind, we turn to Goforth's challenge to the sufficiency of the evidence.

---

[2] *See English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010) (noting that following conviction, an appellant no longer enjoys a presumption of innocence).

[3] *Jones v. State*, 318 Ga. App. 26, 29 (1) (733 SE2d 72) (2012) (punctuation omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (noting that the relevant question is, after viewing the evidence in the light most favorable to the prosecution, could any rational jury found the essential elements of the crime beyond a reasonable doubt).

[4] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted).

6

OCGA § 16-13-30 (b) provides that it is unlawful for any person to "manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute any controlled substance[,]" including methamphetamine.[5] Additionally, OCGA § 16-13-31 (e) provides:

> Except as authorized by this article, any person who sells, delivers, or brings into this state or has possession of 28 grams or more of methamphetamine, amphetamine, or any mixture containing either methamphetamine or amphetamine, as described in Schedule II, in violation of this article commits the felony offense of trafficking in methamphetamine or amphetamine[.]

Importantly, under OCGA § 16-2-20 (a), "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." And under OCGA § 16-2-20 (b) (3), "[a] person is concerned in the commission of a crime only if he [i]ntentionally aids or abets in the commission of the crime[.]"

In this case, the indictment charged Goforth with four separate counts—Counts 1, 2, 4, and 6—of being a party to the crime of the sale of methamphetamine based on the four distinct sales to the CI on February 9, 17, and 24, 2016, and March 17,

---

[5] OCGA § 16-13-26 (3) (B).

7

2016, respectively. In Counts 3, 5, and 7, the indictment charged Goforth with being a party to the crime of trafficking methamphetamine, alleging that on February 24, 2016, he did "sell more than 28 grams of a mixture containing methamphetamine[;]" on March 17, 2016, he did "sell more than 28 grams of a mixture containing methamphetamine[;]" and on March 18, 2016, he did "possess more than 400 grams of a mixture containing methamphetamine[.]"

Focusing primarily on the trafficking charge in Count 7 of the indictment, Goforth argues that the evidence was insufficient to prove that he was in possession of the methamphetamine found in Room 127 of the motel. We disagree.

Under Georgia law, "possession can be actual or constructive[.]"[6] And a person has "actual possession of a thing if he knowingly has direct physical control of it at a given time."[7] In addition, a person who—though not in actual possession—knowingly has "both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it."[8]

---

[6] *Reyes v. State*, 322 Ga. App. 496, 497 (1) (745 SE2d 738) (2013) (punctuation omitted).

[7] *Id.* (punctuation omitted).

[8] *Id.* (punctuation omitted).

Importantly, constructive possession must be "based on a connection between the defendant and the object that is more than spatial proximity."[9] Moreover, when it is "established wholly on circumstantial evidence, the law requires that the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[10] Nevertheless, questions of reasonableness in this regard are "generally decided by the jury."[11]

Here, the State presented evidence that the CI directly contacted Goforth each time she wanted to buy methamphetamine and he specifically instructed her where and when to meet, including directing her to the motel room where the methamphetamine (that became the subject of Count 7) was ultimately recovered. Furthermore, Goforth was in the motel room on March 17, 2016, when the CI purchased methamphetamine from Lumpkin and was just outside the same room with Lumpkin the next day when the sheriff's deputies executed the search warrant and recovered more than 400 grams of methamphetamine. Even so, it is true that "mere

---

[9] *Davenport v. State*, 308 Ga. App. 140, 145 (1) (b) (706 SE2d 757) (2011), *disapproved of on other grounds by Hill v. State*, ___ Ga. App. ___ ( ___ SE2d ___), 2021 WL 2621654, *2 n. 4 (Case No. A21A0351; decided June 25, 2021).

[10] *Id.* (punctuation omitted).

[11] *Id.* (punctuation omitted).

presence at the scene of a crime, even coupled with knowledge and approval, is insufficient to convict one of being a party."[12] But presence, companionship, and conduct before and after the offense are "circumstances from which one's participation in the criminal intent may be inferred."[13] So, although a person will not be presumed to act with criminal intention, the trier of facts "may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted."[14] And if the totality of circumstantial evidence is "sufficient to connect the defendant with the possession of the drugs, the conviction will be sustained, even though there is evidence to authorize a contrary finding."[15]

In this case, the evidence sufficiently shows that Goforth, at the very least, participated and intentionally aided in the commission of the sale and trafficking of methamphetamine by discussing same with the CI, directing her as to the time and

---

[12] *Valdez v. State*, 310 Ga. App. 274, 276 (1) (712 SE2d 656) (2011) (punctuation omitted); *accord Martinez v. State*, 303 Ga. App. 71, 73 (1) (692 SE2d 737) (2010).

[13] *Valdez*, 310 Ga. App. at 276-77 (punctuation omitted).

[14] *Id.* at 277 (punctuation omitted).

[15] *Id.* (punctuation omitted).

place for the transactions, and bragging about his drug business in recorded calls, as well as being present for the majority of those transactions. Given these circumstances, the jury was authorized to find that Goforth was in joint constructive possession of the methamphetamine and was a party to the crime of the sale and trafficking of the drug.[16]

2. Goforth also contends that the trial court erred in allowing the CI and detective to provide testimony identifying him in surveillance photographs and videos. Again, we disagree.

---

[16] *See Osorio v. State*, 323 Ga. App. 843, 844-45 (1) (748 SE2d 483) (2013) (holding that evidence the defendant was person on phone call discussing sale of methamphetamine and was in vehicle where drugs were recovered was sufficient to show he was party to crime of trafficking); *Valdez*, 310 Ga. App. at 276-77 (1) (holding that evidence the defendant drove co-defendants and the cocaine to location for transaction, warned his co-defendants that the buyer was a police officer, and took possession of the funds used for the transaction was sufficient to show that defendant participated and intentionally aided in the commission of the drug trafficking offense); *Culajay v. State*, 309 Ga. App. 631, 634 (1) (710 SE2d 846) (2011) (holding that evidence the defendant helped arrange undercover officer's purchase of over 200 grams of methamphetamine was sufficient that he "was, at a minimum, a party to the sale of and trafficking in methamphetamine" (punctuation omitted)); *Navarro v. State*, 293 Ga. App. 329, 331-32 (667 SE2d 125) (2008) (holding that evidence the defendant drove his co-defendant and vehicle containing methamphetamine to site that had been agreed upon for purchase and participated in discussion regarding purchase, even absent the presumption of possession, was sufficient to convict defendant as a party to the crime of trafficking in methamphetamine).

11

The detective conducted surveillance on the CI's meetings with Goforth and Lumpkin by having her wear a wire, following her to the locations where the controlled purchases occurred, and taking photographs and videos of those transactions. And during the trial, the State introduced those surveillance photographs and videos into evidence, published them for the jury, and both the CI and detective testified that Goforth was one of the people depicted in those images.

On appeal, Goforth argues that the trial court erred in allowing such testimony. And in support of this argument, Goforth cites *Mitchell v. State*,[17] a case decided before the enactment of our "new" Evidence Code,[18] in which this Court held that "a lay witness's testimony concerning an identification should be admitted for the jury's consideration *only* if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury[.]"[19]

---

[17] 283 Ga. App. 456 (641 SE2d 674) (2008).

[18] *See* Ga. L. 2011, p. 99, § 101 (providing that the new Code applies "to any motion made or hearing or trial commenced on or after" January 1, 2013). Of course, we note here that because Goforth was tried in October 2018, Georgia's new Evidence Code applies in this case.

[19] *Mitchell*, 283 Ga. App. at 457 (punctuation omitted) (emphasis in original).

Goforth never objected to this testimony below. Nevertheless, under the "new" Evidence Code, the rulings related to this evidence are "subject to review on appeal for plain error affecting substantial rights."[20] In this regard, the Supreme Court of Georgia has adopted the federal plain-error standard of review, as articulated by the Supreme Court of the United States in *Puckett v. United States*.[21] And under this four-pronged test,

> there [first] must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously

---

[20] *Gates v. State*, 298 Ga. 324, 326 (3) (781 SE2d 772) (2016) (punctuation omitted); *see* OCGA § 24-1-103 (d) ("Nothing in this Code section shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court.").

[21] 556 U.S. 129 (129 SCt 1423, 173 LE2d 266) (2009); *see Gates*, 298 Ga. at 326 (3) (noting that the Supreme Court of Georgia has adopted the four-pronged plain-error standard as set forth in *Puckett*).

affects the fairness, integrity or public reputation of judicial proceedings.[22]

But here, Goforth cannot show that the trial court erred in admitting the CI and detective's testimony identifying him in the surveillance photographs and videos, much less that it plainly erred in doing so. Indeed, the Supreme Court of Georgia has held that testimony identifying a person in photographs is admissible if it meets the requirements of OCGA § 24-7-701 (a) of Georgia's "new" Evidence Code.[23] Specifically, OCGA § 24-7-701 (a) provides:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences shall be limited to those opinions or inferences which are: (1) Rationally based on the perception of the witness; (2) Helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and (3) Not based on scientific, technical, or other specialized knowledge within the scope of Code Section 24-7-702.

---

[22] *Gates*, 298 Ga. at 327 (3) (punctuation omitted), *quoting State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011); *see Puckett*, 556 U.S. at 135 (II).

[23] *See Bullard v. State*, 307 Ga. 482, 491 (4) (837 SE2d 348) (2019) (noting that "[t]he ordinary way to introduce testimony identifying a person in photographs is to meet the requirements of OCGA § 24-7-701 (a) . . ." (punctuation omitted)); *see also* Ronald L. Carlson and Michael Scott Carlson, CARLSON ON EVIDENCE, p. 417 (4th ed. 2016) ("Federal Evidence Rule 701, newly embraced in Georgia as part of the 2013 evidence code, permits a wide range of opinions by lay witnesses.").

With regard to meeting these statutory requirements, our Supreme Court has explained that when "there is some basis for concluding that a witness is more likely than the jury to correctly identify a defendant as an individual depicted in relevant photographs, then lay opinion testimony identifying a defendant in those photographs is admissible under Rule 701 (a)."[24] And while a number of factors may determine if a witness is better suited to identify the defendant, "perhaps the most critical factor to this determination is the witness's level of familiarity with the defendant's appearance."[25] Furthermore, whether to allow such lay opinion testimony under Rule 701 (a) is "a matter for the trial court's sound discretion[.]"[26]

---

[24] *Bullard*, 307 Ga. at 491 (4); *see Glenn*, 302 Ga. 276, 280 (II) (806 SE2d 564) (2017) (noting that in determining admissibility of testimony identifying a defendant in surveillance video under Federal Rule of Evidence 701 (a), upon which the Georgia rule was modeled, the Eleventh Circuit in *United States v. Pierce*, 136 F3d 770, 773 (11th Cir. 1998), rejected the argument that lay witnesses were no better equipped than juries to compare the defendant's appearance with the individual depicted in surveillance images). Because our "new" Evidence Code is modeled on the Federal Rules of Evidence, when the appellate courts of this State consider the meaning of those provisions, "we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit." *Olds v. State*, 299 Ga. 65, 69 (2) (786 SE2d 633) (2016).

[25] *Bullard*, 307 Ga. at 492 (4) (punctuation omitted); *accord Glenn*, 302 Ga. at 280 (II).

[26] *Bullard*, 307 Ga. at 491 (4).

Here, in addition to interacting with him over the course of the several drug transactions, the CI testified that she had known Goforth for a long time. Similarly, in addition to the familiarity gained based on this case, the detective testified that he had known Goforth "probably since 2005." Consequently, there is "some basis for concluding" that the CI and detective were in a better position to correctly identify Goforth in the surveillance videos and photographs than the jurors.[27] Furthermore, Goforth's argument that *Mitchell*,[28] and other Georgia case law on this issue prior to enactment of the "new" Evidence Code, must still be applied lacks merit. To the contrary, the enactment of OCGA § 24-7-701 (a) was a "statutory modification to the admissibility of such evidence and displaced prior precedent on the matter."[29] Accordingly, the trial court did not abuse its discretion, much less commit plain error,

---

[27] *See id.* at 492-93 (4) (holding that trial court did not abuse its discretion in allowing officer to testify as to defendant's identity in photographs, pursuant to OCGA § 24-7-701 (a), given that officer had known defendant for several years); *Glenn*, 302 Ga. at 281 (II) (finding that witnesses, who had known defendant prior to the crime, were in a better position to correctly identify defendant in the video than the jurors and, thus, such testimony was admissible under OCGA § 24-7-701 (a)).

[28] *See supra* notes 17 and 19.

[29] *Glenn*, 302 Ga. at 280 (II) n.4.

16

in allowing the CI and the detective to identify Goforth in those videos and photographs.

For all these reasons, we affirm Goforth's convictions and the denial of his motion for new trial.

*Judgment affirmed. Mercier and Colvin, JJ., concur.*